58 P.(2d) 1167

**JACKLING v. STATE TAX COMMISSION.**
**No. 4110.**

Supreme Court of New Mexico.
May 23, 1936.
Rehearing Denied June 18, 1936.

242

Wilson & Woodbury, of Silver City, and Harris K. Lyle, of Gallup, for appellant.

Frank H. Patton, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for appellee.

BICKLEY, Justice.

The appellant filed his complaint alleging that he was a nonresident of the state of New Mexico; and that he was a resident of California; that he had no residence in the state of New Mexico, and did not reside therein; that he had no business or agency in the state of New Mexico and was not engaged in the transaction of business in, into, or from the state of New Mexico.

The complaint further alleged that Gallup American Coal Company, a Delaware corporation, had a place of business in New Mexico, and conducted business there, and that the corporation also conducted business in other states. It is further alleged that the appellant is the president of Gallup American Coal Company, which maintained an office for said president in San Francisco, Cal., and that the corporation paid to appellant at San Francisco a salary for his services as president.

The remaining allegations set out the matters of fact relating to the amount of salary so paid, the demand upon him to file an income tax return in this state, and the steps taken by him to bring the case before the courts. The complaint sought a review of the determination of the tax commission that appellant is subject to the tax. A demurrer was filed by the tax commission presenting the proposition that the complaint did not state facts sufficient to constitute a cause of action, in that it showed that the plaintiff received a salary from a corporation doing business in the state of New Mexico. The demurrer was sustained and final judgment entered dismissing the complaint.

The following is an outline of the argument of appellant, as stated in his brief:

"Appellant is not within the scope of the New Mexico income tax, chapter 85, Session Laws of 1933.

"A. The State Cannot Tax Persons or Property Wholly Outside of its Boundaries.

"B. The Statute is Limited to Non-residents Doing Business In, Into or From This State.

"C. Appellant Has No Business In, Into or From the State of New Mexico."

For the purposes of this opinion, we assume without deciding the correctness of appellant's propositions A. and B. Appellant concedes that his allegation that he has no business or agency in the state of New Mexico and that he is not engaged in the transaction of business in, into, or from the state of New Mexico is not the statement of a fact admitted by the demurrer. It appears from the complaint that during a portion of the taxable year the appellant is within the state of New Mexico performing his duties as president of the corporation which employs him.

■ Appellant contends that as an individual he has no business in this state by virtue of his employment by the corporation; that the business done here is the business of the corporation as a legal entity, separate and distinct from its officers, agents, or stockholders. Appellant contends that, because his office as corporation president is in San Francisco, Cal., and that his salary is paid to him there, and much of the labor for his principals is performed in his office in California, his salary for services is not derived from a business or occupation carried on in this state.

Able counsel for appellant state that they have found no decision squarely supporting their contention, but cite several

cases which they say touch closely upon it. One of these is Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221, 225, 64 L.Ed. 445, and they quote therefrom as follows: "And we deem it clear, upon principle as well as authority, that just as a state may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or *business within the state, or their occupations* carried on therein, enforcing payment, so far as it can, by the exercise of a just control over persons and property within its borders." (Italics appellant's.)

Appellant then observes: "But on this test, the state must fail. Appellant does not own the revenue producing property— that is the corporation's—and his personal occupation is carried on in California."

He also cites Travis v. Yale & Towne Mfg. Co., 252 U.S. 60, 40 S.Ct. 228, 64 L. Ed. 460, and says: "The basis of this decision was the fact that the employment carried on in New York so it could be said 'that the state protected the individual in his employment.' This feature is lacking in the case at bar."

Shaffer v. Carter, supra, cites Shaffer v. Howard (D.C.) 250 F. 873, 874 (decree reversed and dismissal of bill ordered for want of proper parties, in 249 U.S. 200, 39 S. Ct. 255, 63 L.Ed. 559), which discusses the theory upon which income taxes upon a nonresident may be justified.

From these cases and from Holmes, Federal Taxes (6th Ed.) we are able to glean certain statements of principles relative to the basic considerations governing the imposition of income taxes which we find of value in answering appellant's contention. In Shaffer v. Carter, supra, the court said:

"In well-ordered society property has value chiefly for what it is capable of producing, and the activities of mankind are devoted largely to making recurrent gains from the use and development of property, from tillage, mining, manufacture, from the employment of human skill and labor, or from a combination of some of these; gains capable of being devoted to their own support, and the surplus accumulated as an increase of capital. That the state, from whose laws property and business and industry derive the protection and security without which production and gainful occupation would be impossible, is debarred from exacting a share of those gains in the form of income taxes for the support of the government, is a proposition so wholly inconsistent with fundamental principles as to be refuted by its mere statement. * * *

"Income taxes are a recognized method of distributing the burdens of government, favored because requiring contributions from those who realize current pecuniary benefits under the protection of the govern-

ment, and because the tax may be readily proportioned to their ability to pay. * * *

"That a state may tax callings and occupations as well as persons and property has long been recognized. 'The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property, and business. * * * It (taxation) may touch business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures, and in transportation.' * * * And we deem it clear, upon principle as well as authority, that just as a state may impose general income taxes upon its own citizens and residents whose persons are subject to its control, it may, as a necessary consequence, levy a duty of like character, and not more onerous in its effect, upon incomes accruing to nonresidents from their property or business within the state, or their occupations carried on therein, enforcing payment, so far as it can, by the exercise of a just control over persons and property within its borders. This is consonant with numerous decisions of this court sustaining state taxation of credits due to nonresidents."

The court in solving the problem presented by the attack on the Oklahoma statute found occasion to consider the federal income tax laws by way of analogy. They pointed to a federal statute which imposed a tax upon the entire net income arising or accruing from all sources (with excep-

tions not material) to every citizen of the United States, whether residing at home or abroad and to every person residing in the United States, though not a citizen thereof, followed by: "And a like tax shall be assessed, levied, collected, and paid annually upon the entire net income from all property owned and of every business, trade, or profession carried on in the United States by persons residing elsewhere."

In Shaffer v. Howard, supra, the court held that income of a nonresident received from Oklahoma oil wells was taxable under the Oklahoma Income Tax Act which imposed a tax upon "the entire net income from all property owned, and of every business, trade or profession carried on in this State by persons residing elsewhere." Laws Okl.1915, c. 164, § 1.

As against the contention that it was invalid in respect of nonresidents, the court said: "This [alleged invalidity of the law] is based on the claims that an income tax is a kind of taxation differing in its basic principles from all other taxation; and, as such, being a tax levied against the person who receives the income, is invalid because he is a nonresident; or, if levied against the income is still void because the income is made up from two inseparable elements—the property and the owner's management or intelligence—and the latter of these is outside the state. It is claimed that income taxation is a generic kind of taxation, different from all other taxation, and resting upon an entirely different basis. That income taxation is a sep-

arate and distinct form of exercising the sovereign power of taxation is evident. That the right to its employment rests upon a basis different from that of other modes of raising revenue does not follow. Laying aside political considerations, such as gave rise to the War of the Revolution, there is but one theory of right to tax underlying all taxation—that of protection or benefit rendered by the state to persons, property, or business. * * * Within constitutional limits, the choice of any particular form. of taxation is a practical legislative problem.· Certain classes of taxation have adherents who urge certain consideration, based upon their ideas of just and practical results in taxation. One such class is income taxes, and its sponsors urge its employment on the theory that it places the burden of government upon those most able to bear it. This may be a reason why the Legislature should choose income taxation as a revenue-raising method. It forms no new basis for a right of taxation itself. It refers solely to a choice of methods, all of which rest upon a common basis. The right. to tax an income rests upon the protection or benefit given that income by the state. The next contentions of plaintiff are related in thought, and will be considered together. They are based upon the idea that the entire income, or at least a material, inseparable, component part thereof (the directing or managing intelligence), is without the jurisdiction of the state of Oklahoma. The income here involved arose solely from production of oil wells and appliances within the state of Oklahoma, managed by plaintiff from his city of residence, Chicago, Ill. Unless the state has given protection or benefit to this income, it has no reason or right to ask contribution therefrom. * * * Plaintiff says no such protection has here been given because the levy is 'a tax on this plaintiff because of his income.' In one sense all taxes might be said to be a tax on the taxpayer because of his land or of his personalty or of his business or of some privilege. But what the plaintiff means, as he says further in his brief, is that 'the tax is directed against the individual and not against the property.' By way of further elucidation, he quotes with approval from State ex rel. Sallie F. Moon Co. v. Wisconsin Tax Commission [(1917) 166 Wis. 287] 163 N.W. 639 [165 N.W. 470], a portion of which is that: 'It is the recipient of the income (tax) that ·is taxed, not his property. * * · * The tax is upon the right or ability to produce, create, receive, and enjoy, and not upon specific property.' It does not necessarily follow from this definition that the plaintiff is subject to income tax only in the state of his residence. It means, rather, that he is subject to income taxation only in those jurisdictions which protect him in the production, creation, receipt, and enjoyment of his income. If he lives in Illinois, and has in Oklahoma the property or the business from which his income flows, does not the latter state truly protect him in the privilege of producing, creating, receiving, and enjoying .that income when it permits and protects his business from which the

income flows? How is that affected by his residence? Both the property in Oklahoma and the intelligence in Illinois contributed to this income. Each was necessary to the result. Each had protection from the state in which it was. It is impossible to separate the two elements for taxation purposes. It is impossible, if material, to determine which was most potent in the result. Can either state be told it cannot be compensated for its protection of a necessary component element of this income, or that it cannot measure such compensation by that income? If, through accident or design, an individual dwells in one state, while his business is in part or wholly located in other states, so that he needs, commands, and receives the protection of several states, can his income therefrom escape imposition? It may be true that the state which protects the person of the one who creates, receives, or enjoys an income may require of him therefor a tax measured by his ability to pay from his entire income. That is no reason why the state which protects the business which contributes to his income may not also demand, as pay for that protection, a tax measured by that part of his income which came from that business. If in the one case the state of residence can tax the right to create, receive, and enjoy an income, why cannot another state tax his right to create and receive an income from business within its borders? A tax upon an income of the instant character (from a business) is directed at neither the person who receives nor the property from which the income arises, but at the privilege of making, producing, creating, receiving, and enjoying the income itself. The right to lay such tax depends upon the protection of the person who receives or of the business which helps create that income."

We realize that this case presents a situation different from the case at bar, in that he who exercised the intelligence, skill, and labor incident to management was also the owner of the property managed, situated in the taxing state, yet it is helpful in arriving at our decision.

Section 20, the New Mexico Income Tax Law (Laws 1933, c. 85), provides that the tax assessed by the act "is hereby imposed * * * upon the net income of natural persons non-resident of this State in so far as * * * such net income * * * was derived from property owned or business, trade, profession or occupation carried on in this state by such natural persons."

In Holmes, Federal Income Tax (6th Ed.) at page 969, it is said: "The terms 'trade' and 'business' have been defined as follows: 'that which occupies and engages the time, attention and labor of anyone for the purpose of livelihood, profit, or improvement; that which is his personal concern or interest; employment, regular occupation, but it is not necessary that it should be his sole occupation or employment.'"

By section 3 (p) our Income Tax Act provided a definition of "business":

" 'Business' includes trade, profession, occupation or employment.".

We think it would be too narrow a view to hold that, if appellant's intelligence, skill, and labor is employed in New Mexico, he is not carrying on a business, trade, or occupation in this state. His intelligence, skill, and labor while employed in the state of New Mexico has protection from the state in which he is at the time of such employment.

When our statute imposes the tax upon income derived by nonresidents from business, trade, or profession or occupation carried on in this state, it appears that the business, trade, or occupation so carried on in this state is the "source" of the income. In considering the federal statute taxing income from "Sources Within the United States," Holmes, Federal Taxes, says, at pages 396–398 and 405, 406:

"The word 'source' conveys only one idea—that of origin. It is defined in the Standard Dictionary as follows: 'That from which any act, movement, or effect proceeds; a person or thing that originates, sets in motion, or is a primary agency in producing any course of action or result; an originator; creator; origin. A place where something is found or whence it is taken or derived.' This is its natural, ordinary, and familiar meaning, and it is particularly true that terms used in statutes describing objects of taxation should be construed according to their popular signification.

"The Supreme Court has said that income may be derived from three possible sources only: (1) capital and/or (2) labor and/or (3) sale of capital assets. If these three considerations are to be regarded as the only possible sources, it would seem clearly to follow that in determining whether a particular item of income is from 'sources within the United States' it is necessary to inquire into the nature and location of the activities or property which produced the income. If the income is from labor (services) the place where the labor is done is decisive; if it is done in this country, the income is from 'sources within the United States.' If the income is from capital, the place where the capital is employed is decisive; if it is employed in this country, the income is from 'sources within the United States.' If the income is from the sale of capital assets, the place where the sale is made is likewise decisive. Much confusion will be avoided by regarding the term 'source' in this fundamental light. It is not a place; it is an activity or property. As such has a situs or location; and if that situs or location is within the United States the resulting income is taxable to nonresident aliens and foreign corporations. The intention of Congress in the 1916 and subsequent statutes seems to have been to discard the 1909 and 1913 basis of taxing nonresident aliens and foreign corporations and to make the test of taxability the 'source' or situs of the activities or property which produce the income or from

which it is desired. The result is that, on the one hand, nonresident aliens and foreign corporations are prevented from deriving income from the United States free from tax by virtue of a technical construction of the phrase, 'property owned * * * and * * * business, trade or profession carried on' and the phrase 'business transacted and capital invested'; and, on the other hand, there is no undue imposition of a tax when the activities and property producing the income do not take place or is not employed in this country. Thus, if an income be taxed, the recipient thereof must have a domicile within the jurisdiction, or the property or activities out of which the income issues or is derived must be situated within the jurisdiction so that the sources of the income may be said to have a situs therein. This use of the expression 'sources within the United States' has a more sincere regard for the basic rule that the consideration for taxation is protection of life and property and that the income rightly to be levied upon to defray the burdens of the United States government is that income which is created by activities and property protected by this government. * * *

"§ 207. Income from Personal Services. The Revenue Acts of 1924 and 1921 provide[52] that 'compensation for labor or personal services performed in the United States' shall constitute income from 'sources within the United States,' and that 'compensation for labor or personal service performed without the United States' shall constitute income 'from sources without the United States.' This provision is a statutory enactment of departmental regulations under the 1918 law.[53] The residence of the payor, the place in which the contract for services was made, and the place of payment are immaterial. When a specific amount is paid for labor or personal services performed in the United States, that amount must be included in gross income.[54] A nonresident alien individual employed by a domestic corporation on a monthly salary basis as its salesman in a foreign territory, who visits the home office of the company the first part of each year for the purpose of reporting on sales and conditions generally in the foreign markets and receiving instructions in sales methods and in regard to new apparatus, has been ruled under the 1918 law not to be subject to tax on the salary he receives while in the United States.[55]

"A nonresident alien individual who receives compensation for services performed on a ferry operating between Canada and the United States is in receipt of compensation for services performed partly within and partly without the United States, regardless of the fact that the vessel is under Canadian registry. If the vessel makes regular trips between a United States port and a Canadian port one-half of such services is performed within the United States and one-half within Canada.[56]

"Services Partly Within and Partly Without the United States. When no ac-

curate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or service is performed partly within and partly without the United States, the amount to be included in gross income must be determined by an apportionment on the time basis, i. e., there will be included in the gross income an amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made.[57]"

The author's note 54 to the foregoing text states:

"Reg. 65, Art. 320; Reg. 62, Art. 319; I. T. 2018, T. P. III-23-1590. This is one respect in which the principles discussed on page 396 above are clearly recognized both by the statute and the regulations. The place where the services are performed (where the labor is done) is the location of the source of the income."

The following is article 119—4 United States Treasury Department Regulation 86 under Federal Revenue Act 1934:

"Art. 119—4. Conpensation for labor or personal services.—Gross income from sources within the United States includes compensation for labor or personal services performed within the United States regardless of the residence of the payor, of the place in which the contract for services was made, or of the place of payment. If a specific amount is paid for labor or personal services performed in the United States, such amount shall be included in the gross income. If no accurate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or service is performed partly within and partly without the United States, the amount to be included in the gross income shall be determined by an apportionment on the time basis, i. e., there shall be included in the gross income an amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made. Wages received for services rendered inside the territorial limits of the United States are to be regarded as from sources within the United States. The wages of an alien seaman earned on a coastwise vessel are from sources within the United States."

That our Legislature was aware of allocation problems in case of "Individuals Doing Business Partly Within and Partly Without the State" is apparent from a reading of section 21 of our Income Tax Act. The tax commission promulgated regulations under the act, and article 211 thereof undertakes an elucidation of some of these problems. We do not find, however, "compensation for labor or personal services" so clearly dealt with as in the

United States Treasury Department regulation heretofore quoted.

On the case here made we hold that the New Mexico statute assailed does not violate the due process clause of the Federal Constitution (amendment 14). We hold that the tax in the instant case is uncollectible because imposed upon the theory that all of the income received by appellant by virtue of his employment as president of the Gallup American Coal Company is derived from his business or occupation carried on in this state, whereas it appears that only during a portion of the taxable year the appellant is within the state of New Mexico carrying on such business and occupation. So far as appears by the record, there has been no attempt at allocation or segregation.

By section 2 of the act the state tax commission. is empowered and directed to enforce the income tax therein imposed. By section 49 the commission is given power to make rules and regulations deemed necessary to enforce the provisions of the act.

We do not have before us a case where the taxpayer complains that the tax commission has included in his gross income too large a part of his income on account of labor and personal services derived from his activities and labor and services performed within the state of New Mexico. The plaintiff taxpayer claims that he is subject to no income tax whatever under the facts stated in his complaint. We hold, therefore, that the demurrer to his complaint was properly sustained.

There is a question of procedure requiring our consideration. A doubt arose as to whether section 41 of chapter 85, Laws of 1933, provides a right of appeal to the Supreme Court of the State from judgments of the district court in proceedings had pursuant to said section, which is as follows:

"*Appeal from Tax Commission.* The determination of the Tax Commission upon any application made by a taxpayer for revision of any tax, may be reviewed in any court of competent jurisdiction by a complaint filed by the taxpayer against the Tax Commission in the county in which the taxpayer resides or has his principal place of business, within thirty days after notice by the Tax Commission of its determination. Thereupon, appropriate proceedings shall be had and the relief, if any, to which the taxpayer may be found entitled may be granted and any taxes, interest or penalties paid, found by the court to be in excess of those legally assessed, shall be ordered refunded to the taxpayer with interest at the rate of six per cent per annum from time of payment."

We invited counsel for parties to submit their views upon this question, which they have done. Counsel for appellant does not confidently assert that such right .of appeal exists. The Attorney General on behalf of appellee expresses doubts. It is suggested by appellant that the language of said section: "The de-

termination of the Tax Commission upon any application made by a taxpayer for revision of any tax, may be reviewed in any court of competent jurisdiction," takes the case out of the class of special proceedings and puts it in the category of the ordinary civil case. We do not agree. We think this language does not mean that the determination of the tax commission upon an application made by the taxpayer for revision of the tax may be brought to this court for review directly from the determination of said tax commission. The taxpayer must file his complaint invoking review in the county of his residence or where his principal place of business is, which indicates that said complaint for review is to filed in the district court. We hold that the review mentioned is a review by the district court with the power in such court, upon appropriate proceedings, to revise the revision of the tax by the commissioner or the determination of said commission not to revise it. We do not believe that it was the intention of the Legislature by said act that this court should also have the power, on appeal or otherwise, to revise the revision made by the district court. This court, except where it exercises its original jurisdiction or its superintending control over inferior courts, has appellate jurisdiction extending to all final judgments and decisions of the district courts. However, it has been held in Jordan v. Jordan, 29 N.M. 95, 218 P. 1035, and Los Alamos Ranch School v. State, 35 N.M. 122, 290 P. 1019, that the right of appeal from the judgments and decisions of

the district courts does not exist except where specifically conferred by law. We find nothing in the act in question which confers upon the taxpayer a right of appeal from the judgments of the district court, rendered in proceedings under said statute.

■ Appellant suggests, however, that, if the right of appeal does not exist, then under the circumstances of the case at bar it is entitled to a review on a writ of certiorari. The Attorney General coincides with this view.

In the opinion on rehearing in. Gallup Southwestern Coal Company v. Gallup American Coal Company, 39 N.M. 94, 40 P.(2d) 627, 629, in considering a similar question, we said: "The suggestion was also made in conference, and aroused some interest, that it might be a useful procedural innovation if we were to hold that where an appeal has been allowed to this court and perfected by the filing of a record of the proceedings, and the appeal must be dismissed, as in this case, because the statute fails to afford that remedy, the court may of its own motion, and in a proper case, at its discretion, retain the cause as if on certiorari, deciding such of the contentions, if any, as are open on certiorari."

On account of the public interest in the question presented in the case at bar, and upon further considerations, the parties acquiescing, we conclude that the case may stand as if the present record were here in response to certiorari actually issued;

that the briefs of the parties may stand as presentations of their views respectively, as if presented for review on certiorari.

Finding no fault with the judgment of the trial court, the cause will be remanded, and it is so ordered.

SADLER, C. J., and HUDSPETH, BRICE, and ZINN, JJ., concur.