[No. 162-2.    Division Two.    March 31, 1972.]

TRI-FINANCIAL CORPORATION, *Appellant*, v. THE
DEPARTMENT OF REVENUE, *Respondent*.

*Charles T. Mertsching* (of *Walstead, Mertsching, Huse-moen & Donaldson*), for appellant.

*Slade Gorton, Attorney General, Timothy R. Malone* and *Michael B. Hansen, Assistants*, for respondent.

PETRIE, C.J.—In this appeal we are faced with the determination of whether or not the appellant, Tri-Financial Corporation, is a "successor" to Master Coaters-Longview, Inc., and therefore responsible for Master Coaters' tax liability to the State of Washington under the provisions of

RCW 82.32.140. We hold that Tri-Financial was a "successor" within the meaning of the statute concerned.

Master Coaters-Longview, Inc. was engaged in the business of prefinishing wood panels in Longview, Washington. In October of 1964, Master Coaters leased a complete prefinishing system from Quality Leasing Company. Subsequently, Tri-Financial Corporation succeeded to Quality Leasing's interest in the equipment when Tri-Financial was formed from three other entities: Quality Leasing Company, Vehicles, Inc., and Heavy Equipment Leasing Company.

By December of 1966 Master Coaters had become insolvent and was delinquent in its lease payments to Tri-Financial. In order to protect its rather substantial investment in the leased prefinishing equipment, Tri-Financial organized Tri Long Plywood, Inc., a wholly owned subsidiary, to engage in the prefinishing business. Tri-Financial obtained a lease of the premises from which Master Coaters had carried on its business and entered into a formal "Cancellation, Termination and Assignment Agreement" with Master Coaters. The agreement, dated December 6, 1966, was signed by Master Coaters-Longview, Inc., Tri-Financial Corporation and Tri Long Plywood, Inc. By its provisions, Tri-Financial agreed to accept the cancellation of the equipment lease in consideration of Master Coaters' assignment of the building and premises lease and several equipment leases which Master Coaters had previously executed with CIT Corporation, Vehicles, Inc., and Heavy Equipment Leasing Company. In addition, Tri-Financial agreed to purchase various materials and supplies, such as paints, resins, bonding and binding materials, and unused plywood, which Master Coaters had on hand when it ceased operations. The purchase price for the supplies was set at $24,000 payable by a promissory note due in 3 years.

Tri-Financial was aware that Master Coaters owed undetermined amounts of tax to both the United States Government and the State of Washington and for this reason the note was made payable to "R. G. Wilson, Trustee," a Cali-

fornia attorney. Mr. Wilson was to hold the promissory note for the purpose of satisfying these tax liabilities, but the note was promptly seized by the United States Internal Revenue Service.

Thereafter a tax warrant for $2,773.93 was issued by the Tax Commission of the State of Washington against Tri-Financial Corporation as the successor of Master Coaters. The assessment against Tri-Financial was made under the authority of RCW 82.32.140 which provides:

> *Whenever any taxpayer quits business, or sells out, exchanges, or otherwise disposes of his business or his stock of goods, any tax payable hereunder shall become immediately due and payable,* and such taxpayer shall, within ten days thereafter, make a return and pay the tax due; *and any person who becomes a successor to such business shall become liable for the full amount of the tax* and withhold from the purchase price a sum sufficient to pay any tax due from the taxpayer . . . and, if such tax is not paid by the taxpayer within ten days from the date of such sale, exchange, or disposal, the purchaser or successor shall become liable for the payment of the full amount of tax, and the payment thereof by such purchaser or successor shall, to the extent thereof, be deemed a payment upon the purchase price, and if such payment is greater in amount than the purchase price the amount of the difference shall become a debt due such purchaser or successor from the taxpayer.
>
> No successor shall be liable for any tax due from the person from whom he has acquired a business or stock of goods if he gives written notice to the tax commission of such acquisition and no assessment is issued by the tax commission within six months of receipt of such notice against the former operator of the business and a copy thereof mailed to such successor.

(Italics ours.)

The definition of who is a successor to a business as that term is used in RCW 82.32.140 is found in RCW 82.04.180:

> "Successor" means any person who, through direct or mesne conveyance, purchases or succeeds to the business, or portion thereof, or the whole or any part of the stock of goods, wares, merchandise, or fixtures or any interest

therein of a taxpayer quitting, selling out, exchanging, or otherwise disposing of his business.

Appellant Tri-Financial paid the full amount of the tax and appealed to the Board of Tax Appeals. After a formal hearing, the board affirmed the assessment. Appeal was then made to superior court where appellant's liability for the tax was again affirmed.

On appeal to this court, Tri-Financial's main contention is that it is not a successor to Master Coaters' business within the meaning of RCW 82.32.140. It argues that Master Coaters did not have a business to which it could succeed; Master Coaters was insolvent and defunct; and Tri-Financial merely retook possession of its own equipment. In order to protect Tri-Financial's investment in the equipment, the argument continues, Tri Long Plywood was organized to enter the prefinishing business and to put the equipment to use, but Tri Long Plywood obtained its own customers and established its own business. With reference to the purchase of Master Coaters' unused supplies, appellant contends that this was an arm's length transaction, that it knew of the possible tax liabilities to the federal government and to the State of Washington and that it made a good faith attempt to protect these priority creditors by making its $24,000 note payable to a trustee. The fact that the note was seized by the Internal Revenue Service to the exclusion of the State of Washington, Tri-Financial contends, is merely a resolution of priorities between those two entities.

The effect of RCW 82.32.140 is to place on the successor of a business the burden of providing for any outstanding tax liability incurred by its predecessor and thereby to make the successor secondarily liable for such tax. We cannot agree with appellant's contention that, because Master Coaters had ceased to be a viable entity, there was no business remaining to which Tri-Financial could have succeeded. We do not find the application of RCW 82.32.140 to be so narrow. In placing the responsibility on the successor to pay any tax left owing the state

"[w]henever any taxpayer quits business, or sells out, exchanges, or otherwise disposes of his business or stock of goods . . . ," the tax debt has been made to follow the business, its assets or any portion of them.

The facts are clear that Master Coaters quit, sold out, exchanged or otherwise disposed of its business. It was forced by insolvency to cease operations and, by executing the agreement, it disposed of all interest it had remaining in its assets.[1] We cannot agree that Tri-Financial did no more than retake possession of its own equipment. Tri-Financial not only canceled the lease on its equipment, but it took over every asset that remained of Master Coaters' operations. It purchased Master Coaters' unused supplies, took assignment of leases on various items of equipment and took over the premises lease. By the unambiguous language of RCW 82.04.180 there can be no doubt Tri-Financial qualified as a successor of Master Coaters.

■ Because the state chose this method to insure the collectability of its taxes, onerous though it may be in some respects on a party classified as a successor to a business,

---

[1] The liquidation of Master Coaters' assets was not accomplished through formal insolvency proceedings, which, under the rules promulgated by the Department of Revenue, would have relieved Tri-Financial from liability for the tax. WAC 458-20-216 provides:

The word "successor" includes all persons who acquire the taxpayer's equipment or merchandise in bulk, whether they operate the business or not, unless the property is acquired through insolvency proceedings or regular legal proceedings to enforce a lien, security interest, judgment, or repossession under a security agreement. The following factual situations illustrate the application of the foregoing:

. . .

7. Taxpayer dies or becomes bankrupt, gives into receivership, or makes an assignment for the benefit of creditors.

a. The executor, administrator, trustee, receiver, or assignee is not a successor but stands in the place of the taxpayer and is responsible for payment of tax out of the proceeds derived upon disposition of the assets.

b. A purchaser from the executor, administrator, trustee, receiver, or assignee is not a successor, unless under the terms of the purchase agreement he assumes and agrees to pay taxes and/or lien claims.

the state has not thereby engaged in an unconstitutional exercise of the state's taxing power. The successor provisions enacted by the legislature are intended to insure the collectability of excise taxes remaining unpaid by a taxpayer who quits, sells out, exchanges or otherwise disposes of his business or stock of goods. Appellant's arguments raising issues of due process and equal protection of the law were well answered in *State ex rel. Namer Inv. Corp. v. Williams*, 73 Wn.2d 1, 6, 435 P.2d 975 (1968) where the court addressed itself to the constitutionality of levying a 1 per cent real estate excise tax upon a lease with an option to purchase.

> Due process, equal protection and the privileges and immunities clauses of the federal and state constitutions impose general requirements of reasonableness in the classification of persons and property to which a tax is applicable. As we have heretofore pointed out, the power of the legislature to select and define the activity upon which an excise tax will be levied, within these restrictions and limitations, is plenary, and is an exercise of legislative discretion which is rarely upset by the courts.
>
> It is not the function of this court is cases like this to consider the propriety of the tax, or to seek for the motives or to criticize the public policy which may have prompted adoption of the legislation. . . . Our obligation is to sustain the classification adopted by the legislature if it is neither capricious nor arbitrary, and is reasonably related to some valid public and legislative purpose.

(Citations omitted.)

Tri-Financial was fully aware at the time it contracted with Master Coaters that there were undetermined amounts of tax due and owing from Master Coaters to both the federal and state governments. Nevertheless, Tri-Financial gave no written notice to the State of Washington, as it should have done under RCW 82.32.140, to have the amount of the tax determined and to thereby protect itself. Instead, Tri-Financial elected to pay for the goods it had purchased by a promissory note to be held by a trustee in California. When the tax collecting agency had no notice of the trans-

action and the note was physically located in California, the ability of the State of Washington to collect the tax was seriously prejudiced. Except for the statutory successor provisions, handling the transaction in this manner would have effectively secured for Tri-Financial a priority position over the claim of the State of Washington. As applied to the instant and similar situations, we must conclude that RCW 82.32.140 is a rational means of collecting taxes which might otherwise be uncollectable. That is a valid legislative purpose. *State ex rel. Namer Inv. Corp. v. Williams, supra.*

█ Tri-Financial also contends that its obligation to pay $24,000 under its contract with Master Coaters has been impaired if the state is allowed to extract from it an additional $2,773.93. A contract cannot be considered to be impaired by a statute in force when the contract was made, for it is presumed the contract was made in contemplation of existing law. *Minish v. Hanson,* 64 Wn.2d 113, 390 P.2d 704 (1964).

The decision of the Board of Tax Appeals was not arbitrary and capricious; neither was it clearly erroneous in view of the entire record and the public policy which authorized the decision.

Judgment is affirmed.

PEARSON and ARMSTRONG, JJ., concur.