511 P.2d 765

**STERLING TITLE COMPANY OF TAOS (formerly Title Guaranty and Insurance Company), a New Mexico corporation, and Sterling Title Company (formerly Dona Ana Title Guaranty, Inc.), a New Mexico corporation, Protestants-Appellants,**

v.

**COMMISSIONER OF REVENUE of the State of New Mexico, Appellee.**

**No. 1074.**

Court of Appeals of New Mexico.

June 13, 1973.

Sterling F. Black, Albuquerque, for protestants-appellants.

David L. Norvell, Atty. Gen., Susan P. Graber, Bureau of Revenue, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Chief Judge.

Dona Ana (Dona Ana Title and Abstract Company, a New Mexico Corporation) contracted with Title Guaranty (Title Guaranty and Insurance Company, a New Mexico Corporation). Under the contract, Title Guaranty purchased the tangible assets of Dona Ana. Sterling (Sterling Title Company of Taos) is the corporate successor to Title Guaranty. Dona Ana owed certain taxes. The Commissioner of Revenue made demand upon Sterling for the payment of these taxes, § 72–13–76, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971), and reminded Sterling of the remedies available to the Commissioner under § 72–13–77, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971). Sterling protested that it was not liable for Dona Ana's taxes. After a formal hearing, the protest was denied. Sterling appeals directly to this Court. The issue is the applicability of § 72–13–74, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971). Sterling contends: (1) Dona Ana was not a business on the date of the contract and (2) Sterling was not a successor in business to Dona Ana.

No claim is made that the taxes involved are other than the taxes identified in § 72–13–74(A), supra. The appeal involves § 72–13–74(B) and (C), supra. These paragraphs read:

"B. The tangible and intangible property used in any business remain subject to liability for payment of the tax due on account of that business to the extent stated herein, even though the business changes hands.

"C. If any person liable for any amount of tax sells out his business, the purchaser shall withhold and place in a trust account sufficient of the purchase price to cover such amount until the commissioner issues a certificate stating that no amount is due, and he shall pay over the amount to the bureau upon proper demand therefor by the commissioner."

Sterling claims Dona Ana did not sell out its business when the contract was signed because Dona Ana was not engaged in business on that date. Sterling also claims that it was not a successor in business to Dona Ana because it did not purchase any business—only the tangible assets of Dona Ana. There is evidence supporting the view that Dona Ana was not an active business at the time of the contract. There is evidence that Sterling did not purchase Dona Ana's stock, and did not acquire any accounts receivable or pending orders because there were none.

Thus, Sterling's appeal is based on the view that the business which changed hands must have been an active business for the provisions of § 72–13–74, supra, to apply. This is incorrect.

Section 72–16A–3(E), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971) defines "engaging in business" for the purposes of gross receipts and compensation tax. This definition is in terms of "carrying on" an activity. Section 72–13–74, supra, does not refer to engaging, or carrying on, a business. By its terms, § 72–13–74, supra, does not require an active business.

Jackling v. State Tax Commission, 40 N.M. 241, 58 P.2d 1167 (1936) indicates "business" is that which occupies the time, attention and labor of a person for the purpose of livelihood, profit or improvement; that which is a person's concern or intent. *Jackling*, supra, states it would be too narrow a view to hold that if appellant's intelligence, skill and labor is employed in New Mexico, he is not carrying on a business, trade or profession in this State. See

State v. Old Abe Co., 43 N.M. 367, 94 P.2d 105, 124 A.L.R. 1085 (1939).

Under statutes similar to § 72–13–74, supra, it has been held that the taking over of assets of an insolvent or defunct business was sufficient to meet the statutory requirements. See Knudsen Dairy Products Co. v. State Board of Equalization, 12 Cal.App.3d 47, 90 Cal.Rptr. 533 (1970); Tri-Financial Corp. v. Department of Revenue, 6 Wash.App. 637, 495 P.2d 690 (1972). Thus, the fact that Dona Ana may not have been actively engaged in business does not bar the application of § 72–13–74, supra, to Sterling.

■ Whether Dona Ana sold out its business and whether Sterling purchased that business is a question of fact. Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783 (1941); Stanton v. C. I. R., 399 F.2d 326 (5th Cir. 1968). Accordingly, we examine the facts. In doing so we view the evidence in the light most favorable to the Commissioner's decision. Westland Corporation v. Commissioner of Revenue, 84 N. M. 327, 503 P.2d 151 (Ct.App.1972).

By the contract dated September 23, 1967, Dona Ana sold its title plant [§ 70–2–8, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1971)], and certain furniture, fixtures and equipment. It agreed to assign its lease to Sterling. Mary Lou Alvarez, one of the sellers and a party to the contract, agreed to work for the buyer (Sterling) on a part-time basis for the first year following execution of the contract. An addendum to the contract provided that Sterling would assume a note owed by the sellers to a third party. The addendum also provided the buyer would assume responsibility for rent, utilities and a pro rata share of property taxes and telephone expense as of October 1, 1967. The buyer started operations as of October 1st. In order to start business, it was necessary either to purchase or build a title plant.

At the time of purchase, Sterling did not inquire of the Bureau whether there was any tax liability due from Dona Ana; it

did not request a certificate that no tax was due from Dona Ana; it did not withhold any money for the purpose of paying any tax liability of Dona Ana.

■ The foregoing evidence is substantial and supports the Commissioner's decision that Sterling purchased the business of Dona Ana and that Sterling is subject to the provisions of § 72–13–74, supra. Knudsen Dairy Products Co. v. State Board of Equalization, supra.

The Commissioner's decision and order is affirmed.

It is so ordered.

HENDLEY, J., concurs.

SUTIN, J., specially concurring.

SUTIN, Judge (specially concurring).

This is a special concurrence. This case is a matter of first impression. Taxation has been an integral part of the founding and development of our state and country. Legislative enactments have changed often to raise money for public purposes, to prevent evasion of payment, and to seek payment to award people a democratic form of government. We are confronted with an innovative regulation.

Prior to September 23, 1967, the Bureau issued a series of assessments and invoices against Dona Ana in the total sum of $572.37. On September 23, 1967, by written agreement, Dona Ana sold to Sterling, items, equipment and personal property consisting of the title plant (see § 70–2–8, N.M.S.A.1953 [Repl. Vol. 10, pt. 2, 1971 Supp.]), furniture, fixtures and equipment. Dona Ana also agreed to assign its lease to Sterling. One of the owners of Dona Ana agreed to work for Sterling on a part time basis. Sterling also agreed to assume liability for payment of a note owed by Dona Ana and also assumed responsibility for payment of rent, utilities, telephone expense and a prorated share of property taxes.

At the time of purchase, Sterling did not inquire of the Bureau whether there was any tax liability due from Dona Ana.

Neither did Sterling request from Dona Ana a certificate that no tax was due, nor did it withhold any money from Dona Ana to pay its tax liability. The reasons given were: (1) Sterling did not know of any liability, and (2) Sterling was not a successor in business.

The issue is: After the purchase was made, was Sterling liable for payment of the gross receipts tax owed by Dona Ana even if Sterling did not know of any liability? The answer is "yes."

Section 72–13–74(B) and (C), N.M.S.A. 1953 (Repl. Vol. 10, pt. 2, 1971 Supp.) reads:

B. The tangible and intangible property used in any business remain subject to liability for payment of the tax due on account of that business to the extent stated herein, even though the business changes hands.

C. If the person liable for any amount of tax sells out 'his business, the purchaser shall withhold and place in a trust account sufficient of the purchase price to cover such amount until the commissioner issues a certificate stating that no amount is due, and he shall pay over the amount to the bureau upon proper demand therefor by the commissioner.

This statute holds the purchaser of a "business" liable for gross receipts tax if he fails to withhold sufficient of the purchase price to cover the amount of the tax. This is a device for collection of the tax by imposition of a secondary liability. Knudsen Dairy Products Co. v. State Bd. of Equalization, 12 Cal.App.3d 47, 90 Cal. Rptr. 533 (1970).

The word "business" was not defined in "The Tax Administration Act." "Business" has a meaning too broad for definition. 12 C.J.S. at p. 761. No reference is made in the above statute to the phrase "engaging in business" as defined in § 72–16A–3(E), N.M.S.A.1953 (Repl. Vol. 10, pt. 2, 1971 Supp.) of the "Gross Receipts . . . Tax Act." That phrase applies to the imposition of a tax, not the collection of a tax.

We cast aside such terms as "strict or liberal construction" for or against the taxpayer. These terms constitute a play on words to arrive at a conclusion. This statute seeks collection and enforcement against an alleged successor of a delinquent taxpayer, a purchaser who attempts to escape from public responsibility for failure to withhold. Our duty is to construe the statute with a fair, unbiased and reasonable interpretation, without favor to the taxpayer or the state, to the end that the legislative intent is effectuated and the public interests to be subserved thereby furthered. Besser Company v. Bureau of Revenue, 74 N.M. 377, 394 P.2d 141 (1964); Chavez v. Commissioner of Revenue, 82 N.M. 97, 476 P.2d 67 (Ct.App. 1970).

Section 72–13–74(B) and (C), supra, means: If a tax was assessed against Dona Ana during the time Dona Ana was engaged in business, its tangible and intangible property used in the business thereafter remained subject to liability for payment of the tax even though the tangible and intangible property used in the business changed hands by sale to Sterling. Sterling then became liable for payment of the tax. The reasons are clear.

*First*, the primary purpose of the statute was to make tangible and intangible property security for payment of the tax. The legislature intended this to protect the Bureau and the public against successors who did not withhold an amount sufficient to pay the tax owed by delinquent taxpayers. The legislature did not intend a delinquent taxpayer like Dona Ana to declare its normal business operation ended prior to September 13, 1967, then sell all its personalty to Sterling so that Sterling would be free of liability for the tax. It intended each of the parties to be liable. It intended tangible and intangible property to be security.

*Second,* the legislature did not intend a corporation like Dona Ana to dispose of all

of its property, escape with the proceeds, and be free of any assets with which to pay its tax. *Knudsen,* supra. This would cause the Bureau to seek relief in extended litigation. This burden rests on the purchaser.

*Third,* the phrase "the business changes hands" is a broad, all inclusive expression for maintaining the personalty as security. Its purpose is to avoid, by any means, schemes for evasion of payment of the tax. It is broad enough to include the personalty as security even though a taxpayer quits business, sells out, exchanges, or otherwise disposes of his business or his stock of goods. See Tri-Financial Corp. v. Department of Revenue, 6 Wash.App. 637, 495 P. 2d 690 (1972) and State v. Sloan, 164 Ohio St. 579, 132 N.E.2d 460 (1956), where such language appears in the statute.

On December 30, 1969, the Commissioner sent a demand letter to pay or be subject to the remedies outlined in § 72–13–77, N. M.S.A.1953 (Repl. Vol. 10, pt. 2, 1971 Supp.). Under subsection B thereof, Sterling could ". . . completely discharge his responsibility . . . by surrendering and assigning all his interest in the tangible and intangible property acquired, or the proceeds thereof, to the commissioner . . . ."

Sterling had not withheld in a trust account an amount sufficient to cover the assessments and it protested the demand. It now contends that Dona Anna was not "engaged in business" at the time of purchase, that it was not a successor, both of which absolves it of liability. We do not agree.

We will not read "engaged in business at the time of purchase" into § 72–13–74(B) and (C) to assist a purchaser to avoid payment of the gross receipts tax. If we did, we would encourage schemes by delinquent taxpayers and purchasers to avoid payment of taxes. The burden is placed on the purchaser, at the time of purchase of tangible or intangible property used in a business, to determine whether a gross receipts tax

is due and payable by the seller. *Knudsen,* supra.

When Sterling acquired all of the operating assets of Dona Ana and continued to operate that business, even though it was dormant, or insolvent, Sterling qualified as a successor to Dona Ana. *Tri-Financial Corp.,* supra; *Knudsen,* supra.

Finally, whether Dona Ana was in "business" at the time of purchase and whether Sterling was a successor, were questions of fact for the Commissioner. Stanton v. C. I. R., 399 F.2d 326 (5th Cir. 1968); Higgins v. Commissioner, 312 U.S. 212, 61 S. Ct. 475, 85 L.Ed. 783 (1941). "In determining whether there is substantial evidence in the record, the court considers only favorable evidence and views that evidence in a light most favorable to the Commissioner's decision." Westland Corporation v. Commissioner of Revenue, 84 N.M. 327, 503 P.2d 151, 153 (Ct.App.1972).

The record shows Sterling's position to be primarily argument, assumptions, conclusions and self-serving declarations. The Commissioner's decision and order was supported by substantial evidence.