The MOUNTAIN'S SHADOW INN, INC.,
Plaintiff-Appellant,

v.

COLORADO DEPARTMENT OF LABOR AND EMPLOYMENT, DIVISION OF EMPLOYMENT AND TRAINING; Burton L. Carlson, Director of Division of Employment and Training, Defendants-Appellees.

No. 81SA394.

Supreme Court of Colorado,
En Banc.

Nov. 29, 1983.

Robert L. Harris, Denver, for plaintiff-appellant.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Levis, Asst. Atty. Gen., Denver, for defendants-appellees.

LOHR, Justice.

This is an appeal by The Mountain's Shadow Inn, Inc. (Inn) from a trial court judgment denying the Inn's request for a refund of monies levied and collected from its bank account by the Colorado Department of Labor and Employment, Division of Employment and Training (Division). We reverse.

The plaintiff Inn owned premises containing a bar and restaurant in Lakewood, Colorado. The Inn operated the bar, but the restaurant was run by Dee Swain under an oral lease that was terminable at will. Swain was solely responsible for management of the restaurant for several years until he disappeared on October 20, 1975. After Swain abandoned the premises without notice, the Inn operated both the bar and the restaurant until arrangements were made for a new lessee to take over the restaurant.

Shortly before Swain's disappearance, the Division audited the restaurant's unemployment insurance contributions account and determined that Swain had failed to pay $4,235.62 in unemployment insurance contribution taxes. After efforts to locate Swain and collect the deficiency from him proved unsuccessful, the Division determined that the Inn was liable for the unpaid unemployment contributions and assessed the deficiency against the Inn as Swain's successor, relying upon section 8–79–103(1), C.R.S.1973, of the Colorado Employment Security Act, articles 70 to 82 of title 8, C.R.S.1973 (Act).[1] Even before Swain's disappearance, the Division had treated Swain and the Inn as separate employers and had assigned each a separate account number.

When the Inn continued to refuse to pay the deficiency after an extended period of discussion, the Division levied on the Inn's bank account and seized $5,194.36, the amount of the unpaid unemployment contributions plus interest. The Inn applied to the Division for a refund, was refused, and then brought this action for a refund in the District Court for the City and County of Denver. *See* section 8–79–108(1), C.R.S. 1973. After a trial without a jury, the court entered judgment for the Division, ruling that the Inn had acquired Swain's trade, assets, business, good will and equipment, and thus was a successor to Swain under section 8–70–103(8)(d), C.R.S.1973.[2]

---

1. Section 8–79–103(1), C.R.S.1973, at the time of this controversy, provided:

   The contributions imposed by sections 8–76–101 to 8–76–104 shall be a first and prior lien upon the real and personal property of any employer subject to articles 70 to 82 of this title except as to the lien of general property taxes and except as to valid liens existing at the time of the filing of the notice provided for in section 8–79–105 and shall take precedence over all other liens or claims of whatsoever kind or nature. Any employer who sells, assigns, transfers, conveys, loses by foreclosure of a subsequent lien, or otherwise disposes of his business, or any part thereof, shall file with the division such reports as the commission, by regulation, may prescribe within ten days after the date of any such transaction. *The employer's successor shall be required to withhold sufficient*

*of the purchase money to cover the amount of said contribution due and unpaid* until such time as the former owner shall produce a receipt from the division showing that said contributions have been paid, or a certificate that no contributions are due. *Any such successor who fails to comply with the above provisions shall be personally liable* for the payment of any contributions due and unpaid. (Emphasis added).

This statute has since been amended in respects not relevant to the questions addressed in this opinion and appears in its present form in section 8–79–103(1), C.R.S.1973 (1982 Supp.).

2. Section 8–70–103(8)(d), C.R.S.1973, defines "employer" to include "[a]ny employing unit ... which acquired the organization, trade, or business, or substantially all of the assets of another employing unit which, at the time of

The Inn then appealed to this court.[3]

The Inn's central contentions are that the district court erroneously concluded that it was a successor to Swain under section 8–70–103(8)(d), that the Division denied it due process of law in levying against its bank account, and that the Act is unconstitutionally vague in its definition and treatment of successors. We hold that section 8–79–103(1) imposes no personal liability upon the Inn to pay Swain's delinquent unemployment contributions, and that the district court erred in ruling to the contrary. Therefore, it is unnecessary to address the other issues raised by the Inn.

Section 8–79–103(1) seeks to ensure the collection of unemployment contribution deficiencies in two distinct ways. First, the contributions are declared to be a lien upon the real and personal property of the employer. This lien attaches to the employer's property whenever there is an unpaid obligation for unemployment contributions. In the event the contributions remain unpaid after disposition of the employer's business, the Division can foreclose this lien and apply the proceeds to satisfy the employer's unemployment contributions deficiencies. So far as the record discloses, the Division did not pursue that remedy in the present case.[4] Second, in certain circumstances the employer's successor is declared to be personally liable for the unpaid contributions. The Act, however, limits the settings in which such personal liability arises.

As a condition to personal liability of a successor, the statute specifically contemplates a disposition involving an exchange of "purchase money" and imposes a duty on the buyer to "withhold sufficient of the purchase money to cover the amount of [the unemployment] contribution due and unpaid until such time as the former owner shall produce a receipt from the division showing that such contributions have been paid, or a certificate that no contributions are due." Section 8–79–103(1). Any successor who does not comply "shall be personally liable for the payment of any contributions due and unpaid." *Id.*

Section 8–79–103(1) protects the governmental interest in collection of unemployment contributions while assuring that a person who acquires a business in a transaction not involving a purchase will not be personally obligated to pay the prior owner's unemployment contribution deficiency. Although acquisitions not involving "purchase money" in some form may not be common, the collection remedies prescribed in section 8–79–103(1) are designed to achieve a fair result in such circumstances. Recognizing that the value of the business assets could be less than the amount of the former owner's unpaid unemployment contributions, the legislature has determined that where no "purchase money" is involved personal liability for the delinquent contributions should not be imposed on the new owner.

As another court has said in construing a similar statute, "[t]he secondary liability for the tax which is imposed by [the successor liability statute] arises from a definite act or omission, that is, the failure to withhold the amount of the tax from the purchase price as required by [that statute]." *Knudsen Dairy Products Co. v. State Board of Equalization,* 12 Cal.App.3d 47, 53, 90 Cal. Rptr. 533, 537 (1970). *Accord, Richards v. Blackmon,* 233 Ga. 739, 213 S.E.2d 638 (1975); *Sterling Title Co. of Taos v. Commissioner of Revenue,* 85 N.M. 279, 511 P.2d 765 (1973); *Lunceford v. King,* 633 S.W.2d 761 (Tenn.1982); "[W]here the seller did not receive a purchase price from which a with-

---

such acquisition, was an employer subject to articles 70 to 82 of this title . . . ." That statute does not use the term "successor." The trial court apparently utilized the definition of "employer" to assist in construing the term "employer's successor" under section 8–79–103(1) and in concluding that the latter statute imposed personal liability on the Inn as a successor to Swain.

**3.** This appeal was taken directly to this court because a challenge to the constitutionality of a statute was involved. *See* section 13–4–102(1)(b), C.R.S.1973.

**4.** The trial court's findings suggest that the amount of property owned by Swain and subject to the lien was not extensive.

holding could be made, the purchaser cannot protect the state's interests and therefore cannot be held liable." *Knudsen Dairy Products Co. v. State Board of Equalization, supra,* 12 Cal.App.3d at 54, 90 Cal.Rptr. at 538. *See Bank of Commerce v. Woods,* 585 S.W.2d 577, 581 (Tenn.1979). Under section 8–79–103(1), in the absence of a payment of "purchase money" the Department is left to its remedy of foreclosure of its lien on the real and personal property acquired.[5]

In summary, the employer's property is encumbered by a lien for unpaid unemployment contributions; any successor takes that property subject to the burden of the lien. Thus, the property owned by an employer who has failed to satisfy unemployment contribution obligations is subject to foreclosure before or after the employer transfers the business, and the foreclosure proceeds can be applied to those obligations. However, only when a successor pays for the business and fails to withhold from the purchase price enough money to satisfy unpaid unemployment contributions is that successor personally liable for the contributions.

The reasonableness of this legislative scheme is illustrated by its operation in the present case. As the trial court found, the Inn was compelled by business necessity to continue operation of the restaurant in order to maintain the Inn's hotel and restaurant liquor license.[6] The Inn paid nothing to Swain either directly or indirectly. As applied to these circumstances, the statute avoids the injustice of imposing personal liability on the Inn that might exceed the value of Swain's restaurant property.

The result we reach is dictated by the clear statutory language and is commended by the inherent fairness of the legislative collection scheme. Our reading of section 8–79–103(1) makes it irrelevant whether the Inn was a successor employer to Swain, as found by the trial court. Whether the Inn fits the definition either of "employer" in section 8–70–103(8)(d) or of "employer's successor" in section 8–79–103(1), that latter statute imposed no personal liability upon the Inn for Swain's unpaid unemployment tax contributions.

The Inn has also raised two constitutional issues. First, it challenges the constitutionality of section 8–79–103 on the grounds that the definition of "successor" is vague. The Inn also contends that several of the Division's actions violated procedural due process. Our conclusion that the Inn has no personal liability for Swain's unpaid unemployment contributions, however, is based on construction of the statute, and it is irrelevant to that determination whether the Inn is Swain's successor within the meaning of section 8–79–103(1), or whether the procedures employed to assess and to collect the contributions from the Inn were consistent with due process of law. Therefore, it is not necessary to reach the merits of the constitutional issues raised by the plaintiff. It is well settled that a court will not rule on a constitutional question that is not essential to disposition of the case before it. *Ricci v. Davis,* 627 P.2d 1111 (Colo. 1981); *Weissman v. Board of Education,* 190 Colo. 414, 547 P.2d 1267 (1976).

We reverse the judgment of the trial court and remand this case to that court for entry of judgment consistent with this opinion.

---

**5.** Courts in other states have held that where successor liability is dependent on the payment of a purchase price, that price comprehends consideration in forms other than cash or tangible property. *Bank of Commerce v. Woods, supra* (cancellation of secured obligation); *Knudsen Dairy Products Co. v. State Board of Equalization, supra* (reduction of indebtedness). We have no occasion to go beyond the facts of the present case to consider what might constitute "purchase money" in other types of transactions.

**6.** Section 12–47–119(1)(a) of the Colorado Liquor Code, sections 12–47–101 *et seq.,* C.R.S. 1973 (1978 Repl.Vol. 5), relating to holders of hotel and restaurant liquor licenses, provides that restaurants shall sell liquors to their customers only if meals are served on a regular basis and account for not less than twenty-five percent of the gross income of the business of the licensed premises. Consequently, the Inn had to assure that the restaurant continued to operate in order to maintain its liquor license. Sections 12–47–119(1)(a) and 130(1), C.R.S. 1973 (1978 Repl.Vol. 5).