*1112 OPINION

Per Curiam:

FACTS

Prior to January 2, 1990, Landmark Hotel and Casino, Inc. (“Landmark”) was the owner and operator of the Landmark Hotel and Casino, a business located in Las Vegas. On December 17, 1987, after filing for bankruptcy under Chapter 11, Landmark obtained a $20,000,000 loan from appellant Lloyds Bank PLC (“Lloyds”) which was secured by a deed of trust and security agreement encumbering all of Landmark’s personal and real property.
When Lloyds made the loan to Landmark, the casino was operating under a confirmed Chapter 11 plan of reorganization. However, the Chapter 11 plan proved inefficacious and was eventually converted to a Chapter 7 liquidation proceeding. Thereafter, Landmark ceased making its unemployment contribution payments to respondent Nevada Employment Security Department (“NESD”). Landmark also defaulted on its loan with Lloyds.
On August 1, 1990, the bankruptcy court entered an order permitting Lloyds to foreclose upon the real and personal property subject to its deed of trust and security agreement. Lloyds acquired the Landmark real property at a trustee’s sale held on December 5, 1990. In addition, Lloyds secured ownership of Landmark’s personal property through a series of UCC foreclosure sales. Thereafter, virtually all of the personal property was liquidated.
*1113 On August 21, 1992, NESD demanded payment from Lloyds for unemployment insurance contributions which Landmark had not paid during its operation of the hotel and casino. NESD supported its claim on the basis that Lloyds was a purchaser of Landmark’s assets as contemplated by NRS 612.695.
Lloyds rejected NESD’s demand and filed an action for declaratory relief. Thereafter, both parties filed motions for summary judgment. Ultimately, the district court issued an order granting summary judgment in favor of NESD indicating that the provisions of NRS 612.695 apply to “purchasers” who acquire title pursuant to foreclosure sales.
We conclude that the district court erred and reverse and remand with instructions to enter summary judgment in favor of Lloyds.

DISCUSSION

The focus of this appeal is NRS 612.695, which provides as follows:
612.695 Liability of employer and purchaser upon sale of assets and quitting business.
1. Any employer who shall, outside the usual course of his business, sell substantially all or any one of the classes of assets enumerated in subsection 1 of NRS 612.690 and shall quit business, shall within 10 days after such sale file such reports as the executive director may prescribe and pay the contributions, interest or forfeits required by this chapter with respect to wages for employment to the date of the sale.
2. The purchaser shall withhold sufficient of the purchase money to cover the amount of all contributions and forfeits due and unpaid until such time as the seller shall produce a receipt from the executive director showing that the contributions and forfeits have been paid or a certificate showing that no contributions or forfeits are due.
3. If the seller shall fail, within such 10-day period, to produce such receipt or certificate, the purchaser shall pay the sum so withheld to the executive director upon demand.
4. If such purchaser shall fail to withhold purchase money as provided in subsection 2 and the contributions, interest and forfeits shall not be paid within the 10 days specified in this section, such purchaser shall be personally liable for the payment of the contributions and forfeits accrued and unpaid on account of the operation of the business by the former owner.
(Emphasis added.)
This statute is a necessary part of a legislative policy designed *1114 to collect unpaid unemployment insurance contributions, the statutory intent clearly being to retain sufficient money from the purchase price of a business to satisfy the seller/employer’s tax debt.
However, Lloyds contends that statutes similar to NRS 612.695 have been interpreted to apply only where “purchase money” changes hands. Lloyds also insists that in order for this statute to apply, the purchaser must have the ability to withhold consideration. Thus, Lloyds concludes that where no fund is available from which the “purchaser” can withhold the amount of the debt, no obligation to withhold arises. Finally, Lloyds argues that a secured creditor who acquires title to collateral by credit bidding at a foreclosure sale is not a “purchaser” under the statute. We conclude that these contentions are correct.
In Northern Lights Inn v. Employment Sec. Div., 695 P.2d 723 (Alaska 1985), the court was faced with a set of circumstances similar to the instant case. There, the corporate owner of a hotel became delinquent in paying its unemployment premiums and thereafter the secured creditor foreclosed on the property and purchased the hotel with an “offset bid.” The state argued that Northern Lights became personally liable for the delinquent premiums.[1]
The Alaska Supreme Court agreed with interpretations of similar statutes in other states requiring the withholding of consideration only where the successor has the ability to do so. “Therefore, when there is no fund available from which a successor can withhold the amount of the tax debt, the obligation to withhold does not arise.” Id. at 725. Pursuant to this rule, the court concluded that Northern Lights was not liable for the unpaid tax because of a bona fide inability to withhold consideration. Id.
In Mountain’s Shadow Inn v. Colorado Dep’t of Labor, 672 P.2d 522 (Colo. 1983), the owner of an inn leased out an adjacent restaurant through an oral lease terminable at will. The lessee was delinquent in his payment of unemployment insurance contri *1115 bution taxes and ultimately disappeared without notice. Thereafter, the lessor reentered the premises and continued the business until a new lessee could be secured. The state demanded payment of the delinquent contributions from the owner of the inn under a Colorado statute similar to the one at issue here.[2]
The Mountain’s Shadow Inn court held that the Colorado statute specifically contemplated transactions involving the exchange of “purchase money.” Moreover, the court concluded that “a person who acquires a business in a transaction not involving a purchase will not be personally obligated to pay the prior owner’s unemployment contribution deficiency.” Id. at 524. Accordingly, the court held that the owner was not personally liable for the delinquent tax debt because no exchange of “purchase money” occurred.
We agree with the reasoning of these cases. NRS 612.695 is entitled “Liability of employer and purchaser upon sale of assets and quitting business.” The statute demands that “[t]he purchaser shall withhold sufficient of the purchase money to cover the amount of all contributions” owed the state. We conclude that in the context of the statute at issue, a “purchaser” is one who, through the availability of “purchase money,” is in a position to protect NESD’s interest in collecting delinquent unemployment premiums by withholding a sufficient amount from the purchase price to satisfy the deficiency. See Knudsen Dairy Prods. Co. v. State Bd. of Equalization, 90 Cal.Rptr. 533, 538 (Ct.App. 1970).
Courts should look to the substance rather than the form of a transaction when attempting to effectuate the underlying purpose of a tax collection statute. Levy v. Arizona Dep’t of Economic Sec., 643 P.2d 704, 706 (Ariz. 1982). Accordingly, we conclude that NRS 612.695 contemplates a purchaser who has the ability to *1116 withhold purchase money in order to protect the State’s interest in securing payment of delinquent employer unemployment contributions.
Here, Lloyds was the creditor beneficiary under a deed of trust executed between Landmark and Lloyds to secure a $20,000,000 loan. Nevada law provides that a deed of trust is an instrument which may be used to “secure the performance of an obligation or the payment of any debt.” NRS 107.020. Furthermore, when a debtor defaults, the creditor beneficiary may resort to its security in a trustee’s sale as a means of satisfying the debtor’s obligation. NRS 107.080. In circumstances where, as here, the secured creditor acquires the encumbered property pursuant to a trustee’s sale, the sale will rarely produce proceeds from which money may be retained for satisfaction of the unemployment tax. The usual result of such a sale is merely the satisfaction, in whole or in part, of the secured indebtedness. Stated otherwise, “ordinarily the mere cancellation of an existing debt by the transfer of business assets in kind to a creditor would not constitute a ‘purchase price’ nor impose tax liability on the creditor as a ‘successor’ . . . .” Knudsen Dairy Prods. Co., 90 Cal.Rptr. at 539; see also In re McKeever, 819 P.2d 482, 484 (Ariz. 1991) (“A person acquiring property cannot withhold ‘purchase money’ unless the transaction generates purchase consideration such that the ‘purchaser’ is in a position to account for his predecessor’s tax liability.”).
In the instant case, there were no funds generated in connection with Lloyds’ acquisition of the property securing the indebtedness owed by Landmark. The substance of the proceedings by which Lloyds gained ownership of the secured property was that of debt cancellation or satisfaction, and not a sale as contemplated by the statute.
Our disposition of this matter makes it unnecessary to review the other issue raised on appeal.

CONCLUSION

For the reasons discussed above, we conclude that NESD’s claim against Lloyds for unemployment compensation contributions owed by Landmark is without merit.
Accordingly, the judgment of the district court is reversed and the case remanded with instructions to enter summary judgment in favor of Lloyds.

The relevant portion of the Alaska statute in question provided as follows:
(c) The purchaser or successor in business shall withhold enough purchase money to cover the amount of contriubtions due and unpaid until the employer produces a receipt from the department showing that the contributions have been paid, or a certificate that no contributions are due. If the purchaser or successor fails to withhold purchase money as provided, and the contributions are not paid within 10 days, the purchaser or successor is personally liable for the payment of the contributions accrued and unpaid on account of the operation of the business by the former owner.
Northern Lights, 695 P.2d at 724 n.2 (emphasis added).

The relevant portion of the Colorado statute in question provided as follows:
Any employer who sells, assigns, transfers, conveys, loses by foreclosure or subsequent lien, or otherwise disposes of his business, or any part thereof, shall file with the division such reports as the commission, by regulation may prescribe within ten days after the date of any such transaction. The employer’s successor shall be required to withhold sufficient of the purchase money to cover the amount of said contribution due and unpaid until such time as the former owner shall produce a receipt. . . . Any such successor who fails to comply with the above provisions shall be personally liable for the payment of any contributions due and unpaid.
Mountain’s Shadow Inn, 672 P.2d at 523 n. 1.