GOTTSCH FEEDING CORP., APPELLANT,
V. STATE OF NEBRASKA ET AL., APPELLEES.
621 N.W.2d 109

Filed January 12, 2001.   No. S-99-1156.

David A. Domina and James F. Cann, of Domina Law, P.C., for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

Hendry, C.J., Wright, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Miller-Lerman, J.
### NATURE OF CASE
Gottsch Feeding Corp. (GFC) appeals the order of the district court for Lancaster County which affirmed an order of the State Tax Commissioner (Commissioner) sustaining deficiency assessments for Nebraska use and withholding taxes issued by the State of Nebraska, Department of Revenue (Department) against GFC.

The deficiency assessment for unpaid use tax was based on the Department's determination that GFC was liable for such taxes as a "successor" to RFD-TV, Inc. (RFD), pursuant to Neb. Rev. Stat. § 77-2707 (Reissue 1996). The deficiency assessment for unpaid withholding taxes was based on the Department's determination that GFC was liable for such taxes as a "transferee" of RFD, pursuant to Neb. Rev. Stat. § 77-27,110 (Reissue 1996). The Commissioner agreed with the Department's rulings.

In affirming the order of the Commissioner on appeal, the district court found that RFD sold its stock of goods to GFC, that GFC acquired the RFD business, and that GFC did not conduct itself merely as a stockholder and concluded that GFC was the "successor" and "transferee" of RFD under §§ 77-2707 and 77-27,110.

GFC argues on appeal that because it purchased stock of RFD, it became a mere shareholder of RFD but did not become either a "successor" or a "transferee" of RFD and was, therefore, not liable for RFD's unpaid use and withholding taxes. Based on the facts of this case, we affirm the order of the district court.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

This case has previously been before us. In our memorandum opinion, *Gottsch Feeding Corp. v. Department of Revenue*, 254 Neb. xvii (case No. S-97-205, Apr. 29, 1998), we dismissed the appeal for lack of jurisdiction because the summary judgment entered by the Commissioner from which the appeal was taken was entered without authority. Because the Commissioner's order was a nullity, the district court and this court lacked jurisdiction to review the Commissioner's order. *Id.*

Following our memorandum opinion and order in case No. S-97-205, an administrative hearing was held on September 17, 1998, after which hearing the Commissioner issued an order dated December 15, 1998. The Commissioner determined that GFC was liable for the deficiency assessments as a "successor" and a "transferee" of RFD within the scope of §§ 77-2707 and 77-27,110, respectively. The Commissioner further determined, however, that pursuant to § 77-2702(2), GFC's liability for RFD's unpaid use and withholding tax was limited to the purchase price GFC paid for RFD stock. The Commissioner therefore ordered that the combined tax liability of GFC be reduced to $56,611.96 plus a 10-percent penalty and interest at the statutory rate from December 29, 1989.

GFC appealed the Commissioner's order to the district court for Lancaster County pursuant to Neb. Rev. Stat. § 84-917 (Reissue 1999) of the Administrative Procedure Act. The district court reviewed the case pursuant to its standard of review, which is de novo on the record. See § 84-917(5)(a). The district court

determined that the facts were generally not in dispute and adopted the facts as set forth in the Commissioner's December 15, 1998, order as well as determining additional facts. The facts set forth in the Commissioner's order as adopted by the district court were as follows:

[RFD], a Nebraska corporation, with its executive offices located in Omaha, Nebraska, was incorporated on, or about January 13, 1988. RFD's primary business was the operation of a 24-hour, seven-day-a-week television network, which broadcasted to approximately 380,000 homes in the United States and Canada, via satellite. The focus of RFD's programming was information of special interest to rural area [sic], such as commodities, weather, and educational programs directed at the farming and ranching communities. The principal officers of RFD were Patrick G. Gottsch, who served as Chairmen [sic] of the Board and Chief Executive Officer; Edward L. Zachary, who served as President; and Terese Spalding (sister of Patrick Gottsch), who served as Secretary and Treasurer of the corporation.

RFD's business did not prove financially viable. On July 25, 1989, Patrick Gottsch and Edward Zachary, directors of RFD, adopted a resolution authorizing the officers of the corporation to file a Petition for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Nebraska. Also authorized by the directors was the execution of a "Post-Petition Loan and Security Agreement" between RFD and Livestock Marketing Association of Kansas City, Missouri . . . .

On or about July 27, 1989, RFD filed for reorganization under Chapter 11 of the Bankruptcy Code . . . . Also, on, or about July 27, 1989, RFD filed a motion in the Bankruptcy Court, requesting the incurrence of secured and superpriority indebtedness, pursuant to Section 346(c) of the Bankruptcy Code (11 USCS § 3624(c)) [sic], in order to continue to operate its business . . . . Included in the motion was the agreement between RFD and Livestock Marketing Association securing post-petition loans, and other financial accommodations . . . .

On August 14, 1989, a special meeting of RFD's shareholders met to, among other things, approve or disapprove an offer by Livestock Marketing Association to acquire, by warrant, an eighty percent (80%) ownership interest in RFD. This offer included [a] financial and capital contribution of $500,000.00. Prior to a vote of the RFD shareholders on the Livestock Marketing Association's proposal, Robert Gottsch, on behalf of [GFC], was allowed to present an alternative offer, whereby GFC would acquire eighty percent (80%) interest in the shares of RFD. GFC's proposal was identical in most respects to the proposal presented by the Livestock Marketing Association, except for the following changes:

1. [GFC] was to be substituted for Livestock Marketing Association;

2. [GFC] would advance $700,000.00 to RFD by November 1, 1989;

3. That in the twelve-month period following November 1, 1989, [GFC] would advance, at its discretion, up to $1,500,000.00 to RFD; and

4. [GFC] would be granted, at $0.01 per share, shares sufficient in number, as of September 8, 1989, to allow [GFC] to acquire an eighty percent (80%) interest in RFD.

It was unanimously adopted by RFD's shareholders to accept GFC's proposal . . . and an "Agreement of Understanding" was executed between RFD and GFC . . . . It was on August 14, 1989 that, "Gottsch took over total and daily management and operation of RFD[.]" . . .

[GFC] is a South Dakota corporation, domesticated in Nebraska, with business locations in Elkhorn, Nebraska and South Dakota. The corporation's principal business is the feeding of livestock and all activities associated therewith. Robert Gottsch is the President of the corporation; Robert L. Gottsch, Jr., is Vice-President; and Brett A. Gottsch is Secretary/Treasurer . . . .

On August 17, 1989, Livestock Marketing Association unconditionally transferred to GFC, in consideration of $186,673.99, all rights, title, and interest in any, and all agreements executed in favor of RFD . . . . On August 24,

1989, RFD filed a motion in Bankruptcy Court seeking approval of the assigned and modified agreement in favor of GFC . . . .

On September 6, 1989, the Bankruptcy Court entered an order approving the assigned and modified agreement in favor of GFC, and also approved RFD's incurrence of secured superpriority indebtedness. . . . Accordingly, a common stock purchase warrant was executed, on September 8, 1989, between Edward Zachary, as President of RFD, and Robert Gottsch, as President of GFC, whereupon exercise of the warrant GFC would acquire 5,661,096 shares of RFD common stock at $0.01 par value per share. This acquisition would represent eighty percent (80%) of RFD's common shares then issued and outstanding . . . .

On September 8, 1989, the RFD Shareholders met and adopted several resolutions . . . :

1. The number of shares of the corporation (RFD) to be owned by [GFC] would be in a number equal to four times the number of shares issued and outstanding as of September 8, 1989;

2. The authorized shares of RFD stock authorized to be issued would be increased from 5,00[0],000 to 7,500,000 shares;

3. The resignations of Patrick Gottsch, Edward Zachary, and Sam Curley as Chairmen [sic] of the Board and Chief Executive Officer, and President and Chief Operating Officer, and Vice President, respectively, were accepted;

4. The number of authorized directors of RFD were [sic] reduced from ten to not less than one and no more than three directors;

5. Mr. Robert Gottsch and Mr. Brett Gottsch were unanimously elected new directors of RFD; and

6. The filing of the Voluntary Chapter 11 bankruptcy action was ratified.

Later in the morning of September 8, 1989, the two newly elected directors of RFD, Robert and Brett Gottsch, met in a special meeting of the Board of Directors . . . . Robert Gottsch was elected Chairman of the board, Chief Executive officer, and President of RFD. Brett Gottsch was

elected Vice-President. Terese Spalding was elected Secretary, and David Weiler was elected Treasurer of RFD. David Weiler was also the controller of GFC . . . . On September 20, 1989, David Weiler was also elected Secretary of RFD, due to the resignation of Terese Spalding . . . .

On or about September 25, 1989, RFD filed a motion in Bankruptcy Court requesting authorization to exercise the common stock purchase warrant . . . . Included among the attached exhibits to the motion was an exercise of warrant statement prepared for the signature of Robert G. Gottsch, and dated December 29, 1989 . . . .

On November 10, 1989, to secure compliance with 47 USCS 310(d), an application was filed by RFD with the Federal Communications Commission (hereinafter "FCC") for their [sic] consent to transfer control of RFD's common carrier radio station construction permit or license to GFC . . . . It was represented to the FCC that control of RFD would be transferred to GFC by means of the exercise of the common stock purchase warrant. In describing how the control of RFD was to be transferred to GFC, the application stated:

"RFD TV, Inc. has entered into a Common Stock Purchase Warrant (copy attached) with the Transferee, [GFC]. Upon FCC approval of the transfer of the earth station license requested herein, and satisfaction of other conditions, Transferee may exercise its warrant and acquire 5,661,096 shares of common stock of RFD TV, Inc., representing 80% of the common shares then issued and outstanding. [Citation to record omitted.]"

The application for consent to transfer control was granted by the FCC on February 9, 1990, whereupon the parties had 60 days to consummate the transaction. On April 10, 1990, an extension of time was requested in order to consummate the transaction, which extension was granted by the FCC on June 28, 1990, until August 10, 1990 . . . . Mr. Griffin received no further information, nor had any knowledge that the common stock purchase warrant had been exercised by GFC . . . .

On December 27, 1989, Judge Mahoney [U.S. Bankruptcy Court for the District of Nebraska], by means of a Journal Entry, authorized GFC to exercise the common stock purchase warrant . . . . On December 29, 1989, Mr. Robert Gottsch wrote, on a GFC check, a check (#5738) in the amount of $56,611.96 to the order of RFD. The notation on the deposit slip of RFD stated "stock purchase." The check was deposited in RFD's bank account on, or about January 3, 1990 . . . . There is no direct evidence in the record that the stock certificates were actually issued by RFD to GFC, or that the warrant was transferred on the books of RFD. However, it was represented to the Bankruptcy Court in RFD's operating report that such stock transfer indeed occurred . . . .

RFD was required to submit regular reports to the bankruptcy court. One such report includes a comparative balance sheet for the months of January and February of 1990. . . . The Comparative Balance Sheet shows an entry in shareholders equity, common stock for January 1990 of $70,637. The shareholders equity, common stock entry for February 1990 is $14,025. . . . The difference between the common stock entries is $56,612. On the source and Use of Cash report, a decrease in common stock is listed for February 1990 as $56,612. . . . This may show a return of the consideration paid for the purchase of stock. However, RFD's bank records for the corresponding time period do not show a withdrawal of $56,612 to support the accounting entries showing a return of the purchase price of the common stock. . . . The bank records do show the deposit of $56,611.96 in early January, 1990. . . .

In August of 1990, [GFC] filed an Objection to Disclosure Statement with the Bankruptcy Court. In this pleading, [GFC] represents itself as, "the Super-Priority Debtor in this action and/or the majority shareholder in the corporation of RFD-TV, Inc." . . .

At some point in time after determining that RFD could no longer operate, Robert Gottsch attempted to sell some of the property of RFD in order to pay off creditors. Much

of the property was not sellable [sic] and was given to Channel 12 in Lincoln. . . .

On April 23, 1990, Robert Gottsch informed all current employees that, because RFD remained unprofitable, its last day of broadcasting would be April 27, 1990 . . . .

On January 24, 1991, the Nebraska Department of Revenue issued a deficiency determination to GFC for the unpaid sales/use tax liability of RFD in the amount of $21,766.88 as a "successor-in-interest," pursuant to *Neb. Rev. Stat.* § 77-2707 (Reissue 1996). GFC timely protested this assessment on January 30, 1991. By letter dated March 14, 1991, the Department set aside the previously issued assessment. However, on March 10, 1993, the Department "after reviewing additional documentation" reissued the deficiency assessment to GFC for the unpaid use tax liabilities of RFD in the total amount of $174,195.30. Also, on March 10, 1993, the Department issued another assessment to GFC for the unpaid withholding liabilities of RFD in the amount of $9,415.30. GFC timely protested the Department's withholding assessment on June 2, 1993.

(Citations to record omitted.)

Upon review, the district court concluded that GFC was RFD's "successor" under § 77-2707 and its "transferee" under § 77-27,110 and was therefore liable for the use and withholding taxes due from RFD. The district court's conclusion was based in part on its findings that "GFC acquired the business of RFD," which we understand to mean that RFD sold out its business to GFC, that "RFD became a part of GFC and was operated by GFC," that RFD sold its "stock of goods" to GFC, that GFC ran RFD's business, and that although GFC had purchased 80 percent of RFD's common stock on December 27, 1989, "GFC clearly did not conduct itself merely as a stockholder" of RFD. The district court's specific factual findings are detailed in the "Analysis" section below. The district court affirmed the Commissioner's December 15, 1998, order. GFC appeals.

## ASSIGNMENTS OF ERROR

GFC asserts that the district court erred in (1) determining that GFC was RFD's "successor" pursuant to § 77-2707; (2)

determining that GFC was RFD's "transferee" pursuant to § 77-27,110; (3) determining that RFD sold out its business and its stock of goods to GFC; and (4) determining that GFC was liable for unpaid use and withholding taxes of RFD. Neither party addresses or challenges the limits of liability under either § 77-2707 or § 77-27,110, in regard to which the Commissioner held that GFC's total liability was limited to the amount it paid to purchase RFD's stock. Accordingly, we do not address this issue.

## STANDARDS OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Big John's Billiards v. Balka*, 260 Neb. 702, 619 N.W.2d 444 (2000). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.* Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Id.*

## ANALYSIS

The Department assessed liability against GFC for the unpaid use taxes of RFD based on § 77-2707, which provides:

> (1) If any person liable for any sales or use tax under the provisions of the Nebraska Revenue Act of 1967 sells out his business or stock of goods or quits the business, his successor or assign shall withhold sufficient of the purchase price to cover such amount until the former owner

produces a receipt from the Tax Commissioner showing that it has been paid or a certificate stating that no amount is due.

(2) If the purchaser of a business or stock of goods fails to withhold a portion of the purchase price as required, he shall become personally liable for the payment of the amount required to be withheld by him to the extent of the purchase price, valued in money. Within sixty days after receiving a written request from the purchaser for a certificate, or within sixty days from the date the former owner's records are made available for audit, whichever period expires later, the Tax Commissioner shall either issue the certificate or mail notice to the purchaser at his address as it appears on the records of the Tax Commissioner of the amount that must be paid as a condition of issuing the certificate. Failure of the Tax Commissioner to mail the notice shall release the purchaser from any further obligation to withhold a portion of the purchase price as provided in this subsection. The time within which the obligation of the successor may be enforced shall start to run at the time the former owner sells out his business or stock of goods or at the time that the determination against the former owner becomes final, whichever event occurs later.

The Department assessed liability against GFC for the unpaid withholding taxes of RFD based on § 77-27,110(1), which provides:

The liability, at law or in equity, of a transferee of property of a taxpayer for any income tax, addition to such tax, penalty or interest due the Tax Commissioner under the provisions of the Nebraska Revenue Act of 1967, shall be assessed, paid and collected in the same manner and subject to the same provisions and limitations as in the case of the tax to which the liability relates. Transferee shall include donee, heir, legatee, devisee, distributee, successor, and assignee.

▪ The liability for sales and use taxes addressed in § 77-2707 applies to "successors" or "assigns." See § 77-2707(1). We note that the broad category of "transferee" in the successor income tax statute, § 77-27,110, includes, inter

alia, "successors" and "assignees." Both § 77-2707, pertaining to sales and use tax, and § 77-27,110, pertaining to income tax, were enacted as part of the Nebraska Revenue Act of 1967. A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme. *In re Estate of Myers*, 256 Neb. 817, 594 N.W.2d 563 (1999). Reading §§ 77-2707 and 77-27,110 together, we conclude that one found to be a "successor" pursuant to § 77-2707 would logically be considered the kind of "transferee" denominated "successor" under § 77-27,110. Accordingly, we may look to the sales and use concepts applicable to a successor under § 77-2707 and comparable statutes elsewhere to determine liability under both §§ 77-2707 and 77-27,110.

We have not previously had occasion to construe § 77-2707. However, other state courts have interpreted similar state statutes which impose liability for sales and use tax on successors. Some states construe successor tax liability statutes broadly while others construe such statutes strictly.

Those courts which have construed successor tax liability statutes broadly do so in order to achieve the purpose of securing the collection of tax due the state by imposing liability on a successor. See *Bates v. Director of Revenue*, 691 S.W.2d 273 (Mo. 1985) (purpose of successor liability statutes is to secure collection of taxes by imposing derivative liability on purchasers of business who are generally in better financial position to collect or pay tax); *Bank of Commerce v. Woods*, 585 S.W.2d 577 (Tenn. 1979) (clear intention of successor liability statutes is to provide that tax debt follows business, its assets or any portion of them and such statutes are broadly construed in order not to jeopardize interest of public in ensuring collectability of taxes); *Tri-Financial Corp. v. Dept. of Rev.*, 6 Wash. App. 637, 495 P.2d 690 (1972) (successor provisions intended to ensure collectability of taxes remaining unpaid by taxpayer who quits, sells out, exchanges, or otherwise disposes of business or stock of goods); Annot., 65 A.L.R.3d 1181 (1975). See, also, *Revenue Cabinet v. Triple R Food A Rama*, 890 S.W.2d 638, 640 (Ky. App. 1994) (citing *Bates* and *Woods* and stating interpretation of Kentucky law is consistent with that in Missouri and Tennessee and is demanded by "public interest in collecting taxes").

Those states which have construed successor liability statutes strictly do so in order to favor the taxpayer, especially where the statutes seek to impose the tax liability of one person on another. *In re McKeever*, 169 Ariz. 312, 819 P.2d 482 (1991); *Knudsen Dairy Products Co. v. State Bd. of Equalization*, 12 Cal. App. 3d 47, 90 Cal. Rptr. 533 (1970).

It has also been suggested that neither a "broad" nor "strict" approach need be adopted, but, rather, the statute should be interpreted to effectuate intent as evidenced by the language of the statute. See, e.g., *Sterling Title Co. of Taos v. Commissioner of Rev.*, 85 N.M. 279, 511 P.2d 765 (N.M. App. 1973) (Sutin, J., specially concurring). We favor the approach articulated in the concurrence in *Sterling Title Co. of Taos*, to the effect that we need not characterize the interpretation of the successor tax liability statutes as either a "strict" or a "liberal" interpretation for or against the taxpayer, but, rather, "[o]ur duty is to construe the statute with a fair, unbiased and reasonable interpretation, without favor to the taxpayer or the state, to the end that the legislative intent is effectuated and the public interests to be subserved thereby furthered." 85 N.M. at 282, 511 P.2d at 768.

GFC argues that the district court erred in finding it to be RFD's successor because RFD did not "sell out its business or stock of goods" to GFC or "quit the business." See § 77-2707(1). GFC argues that it is not RFD's successor because RFD merely sold shares of its stock to GFC and RFD continued in business after selling its stock to GFC. We do not find error by the district court which found that RFD sold out its business to GFC, that RFD sold its stock of goods to GFC, and that "GFC did not conduct itself merely as a stockholder or creditor of RFD" and concluded that GFC was RFD's "successor."

We note that the provisions of § 77-2707(1) imposing successor tax liability apply when a taxpayer "sells out his business or stock of goods or quits the business." The conditions for creating a successor under § 77-2707 are stated in the disjunctive, and it is therefore not required that a taxpayer sell out the business *and* the stock of goods *and* quit the business. Under the statute, the district court could have properly concluded on the record before it that GFC was RFD's successor based solely on a finding sup-

ported by competent evidence that RFD had sold out its business to GFC and/or sold its stock of goods and/or quit the business.

In reviewing the district court's determination that GFC was RFD's successor, our inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *Big John's Billiards v. Balka*, 260 Neb. 702, 619 N.W.2d 444 (2000). An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.* The district court in its order set forth its factual findings and conclusions as follows:

> From the time the bankruptcy court entered the order on September 6, 1989 approving the "Post-Petition Loan Agreement" between RFD and GFC and the secured and super-priority indebtedness, GFC assumed total control of RFD's operations. Robert Gottsch and Brett Gottsch replaced RFD's directors, and, together with other GFC personnel, replaced RFD's officers and management. GFC financed the operation and payroll obligations of RFD. GFC paid creditors of RFD, including an outstanding loan to Mid-City Bank of Omaha on October 4, 1989. RFD was advertised as an affiliate of GFC.

> RFD had very little in tangible assets or goods. They included, primarily, office furniture and machines, leased office space, a leased satellite dish, broadcasting and weather equipment and some movie tapes, almost all of which were encumbered in one way or another, with a nominal net value. There were very few customers purchasing advertising, although the existing affiliate stations could be considered as customers. RFD's only significant "asset" was the actual television broadcast going to the homes of its viewers, the number of which is unknown.

> The fact that GFC and RFD shared board members, that Robert Gottsch was president of both corporations and that Robert was actively involved in the management of RFD do not, in and of themselves, establish that RFD sold its stock of goods to GFC; however, taken as a whole, the evidence does support such a finding.

A strong indication of a sale of RFD's stock of goods to GFC is the van purchased by RFD in September 1989 to haul equipment, the title to which was later transferred to GFC. Another factor was GFC's advertising on RFD during the period of the Chapter 11 reorganization. Advertising time, which is comparable to customer lists and customer goodwill and, as such, assets of a company, was one of RFD's few viable assets. Although GFC used considerable advertising time, the record does not show that it made any payments to RFD for this service.

Another significant indication of GFC controlling RFD's assets comes from the decision to cease RFD's broadcasting. The notice to employees advising them that RFD was ceasing operations was by a letter dated April 23, 1990, on GFC letterhead, signed by Robert Gottsch, as president of GFC. At the time of the letter, Robert Gottsch had two avenues of authority available to him: the authority as the president of RFD to control all operational aspects of RFD and the authority as the president of GFC, a superpriority lien holder. There is no directive from RFD's board of directors to cease operations, and, as mentioned, the notice was from GFC. A close reading of the April 23 letter provides significant insight into Robert Gottsch's view of RFD. It was the view of a manager of the business, not a mere stockholder or lienholder.

The letter's explanation of the closing sounds like RFD's president is talking. It says that the closing is the result of obtaining no new advertising or affiliate subscriptions. Robert Gottsch does not say that the closing is because GFC has refused to loan any more money to RFD; rather, the closing is because RFD has remained unprofitable for eights [sic] months, despite GFC's efforts. During his deposition, Robert Gottsch said, "After eight months and no sales, you have to close it down." This is the decision of a manager or owner, not a superpriority lien holder.

The clearest way to establish that GFC took over RFD's stock of goods would be evidence that GFC became title holder of RFD's tangible assets. Such evidence does not exist; however, there is evidence that relates to that issue.

As previously noted, GFC acquired a security interest in certain of RFD's assets, when it was assigned the promissory note in favor of Mid-City Bank, in September of 1989. In exchange for the assignment, GFC paid Mid-City Bank $150,000. Acquiring the promissory note, at a discount, was a curious transaction by a superpriority lien holder. It appears that this was a purely voluntary act by GFC, since, under the terms of the stock purchase warrant, GFC agreed to indemnify RFD employees or shareholders for any amounts due Mid-City Bank for loans due on or before November 1, 1989, but was not required to acquire the promissory note.

Generally speaking, unless a creditor takes steps to operate or control a business, the creditor is not considered to be a successor with respect to the business. In the instant case, RFD and GFC had an interconnected and complex relationship, beyond that of creditor and debtor. The assigned promissory note from Mid-City Bank is just one example of that relationship.

It is clear that RFD became a part of GFC and was operated by GFC as a going concern. GFC became the successor of RFD. GFC clearly did not conduct itself merely as a stockholder or creditor of RFD - it acquired RFD's assets and ran the business of RFD.

In addition, the court finds that GFC acquired the business of RFD and was a successor. Although GFC denies that it actually exercised the stock purchase warrant, the evidence does not support this. According to the warrant, GFC was to pay $56,610.96, on or before November 1, 1989. As noted above, GFC issued a check in this amount, payable to RFD, on December 27, 1989. Obviously, the parties waived the time limitations of the warrant. This check was deposited on January 3, 1990 with a RFD deposit slip that contained the notation "stock purchase." Additionally, GFC later represented to the bankruptcy court that it was a majority stockholder in the August 9, 1990 objection to disclosure statement filed by RFD. The court finds GFC did purchase 80 percent of RFD's common stock on December 27, 1989.

This conclusion is consistent with the deposition testimony of [the] attorney who represented RFD during the first seven months of 1989, who noted the importance of the 80 percent ownership in order to file consolidated tax returns. This would allow losses of RFD to be used to offset the income of GFC. Further, GFC's application to the FCC in November of 1989 stated that GFC intended to purchase 80 percent of the stock of RFD.

We have reviewed the district court's judgment for errors appearing on the record. As a result of that review, we determine that competent evidence supports the district court's factual findings and we do not substitute our findings therefor. See *Big John's Billiards v. Balka*, 260 Neb. 702, 619 N.W.2d 444 (2000). We conclude that the district court's factual findings support its conclusion that GFC was RFD's "successor" and its "transferee." See §§ 77-2707 and 77-27,110.

Given the circumstances in this case, the district court reasonably found that RFD sold out its business and stock of goods to GFC and that GFC "did not conduct itself merely as a stockholder." With respect to the stock, GFC's purchase of RFD stock was one part of a series of steps by which GFC took over control of RFD's assets and business. Rather than purchasing outstanding stock from existing shareholders, GFC purchased stock which was newly issued in an amount equal to four times the then-existing shares in order to create and give GFC an 80-percent interest in the resulting common stock of RFD. GFC did not merely acquire RFD stock. On the contrary, there was evidence that GFC and its management became actively involved in the management and operation of RFD shortly before and subsequent to the stock purchase. There was also evidence that RFD sought and gained approval from the FCC to transfer its license to GFC and that title to a van purchased by RFD was transferred to GFC. The district court's conclusion that GFC was RFD's "successor" is supported by competent evidence.

GFC argues that its relationship to RFD was merely that of a shareholder and that a shareholder cannot become liable for the unpaid taxes of a corporation merely by purchasing stock in the corporation. We are aware that ordinarily under corporate law, stockholders are not personally liable for the debts of the corpo-

ration and that a stockholder stands to lose what he, she, or it has dedicated to the corporate enterprise and nothing more. See *ServiceMaster Indus. v. J.R.L. Enterprises*, 223 Neb. 39, 388 N.W.2d 83 (1986). However, the determination of successor tax liability under §§ 77-2707 and 77-27,110 is made pursuant to Nebraska tax statutes, and our analysis is guided by concepts in the area of tax law. In this regard, we note that as detailed more below, tax law makes certain distinctions in situations in which a corporation, as distinguished from an individual or other entity, owns or purchases a controlling interest in another corporation.

In connection with GFC's stock ownership of RFD, we observe that the 80-percent level of stock ownership which GFC acquired is significant in various aspects of federal corporate tax law. For example, the Internal Revenue Code allows corporations to file a consolidated tax return if a common parent corporation directly owns stock possessing at least 80 percent of the total voting power and having a value at least equal to 80 percent of the total value of the stock of the corporation. I.R.C. §§ 1501 and 1504(a)(2) (1994). The 80-percent requirement is also significant in determining whether a corporation is part of a controlled group, see I.R.C. § 1563(a) (1994), and a purchasing corporation may elect to have its purchase of another corporation's stock meeting the 80-percent requirement of § 1504(a)(2) treated as an asset acquisition rather than as a stock purchase, see I.R.C. § 338 (1994).

We do not intend to imply that federal corporate income tax law controls the interpretation of the Nebraska sales and use tax and withholding statutes. Nor do we intend to delineate a bright-line rule that a purchase of 80 percent or more of a corporation's stock invariably makes the purchaser the successor of that corporation under § 77-2707 or § 77-27,110 or that the purchase of less than 80 percent shields the purchaser from successor tax liability pursuant to § 77-2707 and thus § 77-27,110. Instead, we observe that the 80-percent feature in other areas of tax law indicates a legislative determination in those areas that acquisition of 80 percent or more of another corporation's stock by a purchaser corporation suggests control of one corporation by another. Therefore, the fact that GFC purchased 80 percent of RFD's stock tends to support the district court's findings that

"RFD became a part of GFC," that GFC ran RFD's business, and, ultimately, that RFD "sold out its business" to GFC.

We agree with GFC that the mere purchase of stock in a corporation standing alone would not ordinarily be sufficient to impose successor tax liability under § 77-2707 and thus § 77-27,110. However, we determine that under the totality of the facts of this case, the district court's determination that GFC was a successor and transferee is supported by competent evidence and was not arbitrary, capricious, or unreasonable.

As noted above, the record in this case shows that in addition to the 80-percent ownership, RFD's board of directors was replaced by GFC personnel, that RFD's officers were replaced by GFC personnel, that GFC management operated RFD, and that RFD transferred or took steps to transfer its tangible and intangible assets to GFC. GFC's purchase of an 80-percent stock ownership when combined with other evidence that GFC took control of RFD's assets and the management and operation of RFD's business is competent evidence supporting the district court's finding that RFD sold out its business and stock of goods to GFC. The district court's conclusion that GFC was a "successor" and a "transferee" for tax liability purposes under §§ 77-2707 and 77-27,110 was not error.

## CONCLUSION

We determine that the district court's findings that RFD sold out its business and stock of goods to GFC and that GFC acquired the RFD business are supported by competent evidence. The district court's conclusion that GFC was RFD's "successor" pursuant to § 77-2707 and RFD's "transferee" pursuant to § 77-27,110 and therefore liable for unpaid use tax under § 77-2707 and withholding tax under § 77-27,110 was not error. The order of the district court affirming the order of the Commissioner is, therefore, affirmed.

AFFIRMED.

CONNOLLY, J., not participating.