687 N.W.2d 438 (2004)
12 Neb. App. 944
Douglas LOUIS, appellee,
v.
NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES, appellant.
No. A-03-868.
Court of Appeals of Nebraska.
October 12, 2004.
*440 Jon Bruning, Attorney General, Delores N. Coe-Barbee, and Linda L. Willard, Lincoln, for appellant.
No appearance for appellee.
IRWIN, MOORE, and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
The Nebraska Department of Correctional Services (DCS) appeals the order of the district court for Johnson County, Nebraska, which reversed a judgment of discipline imposed on prison inmate Douglas Louis for his refusal to submit to a search. Because we conclude that after Louis had made a valid waiver of the right to a hearing, due process did not require that Louis be allowed to revoke that waiver, we reverse, and remand with direction.

BACKGROUND
On January 21, 2003, a DCS caseworker observed Louis walk into the housing unit with a paper sack. At that time, Louis was on room restriction, a disciplinary measure that imposed restrictions on certain privileges, including purchases from the prison's canteen. The caseworker asked Louis what was in the sack, and Louis replied, "`That's none of your [expletive] business.'" The caseworker gave Louis a direct order to reveal the contents of the sack, and Louis again refused to comply. The caseworker ordered a "shakedown," or search, and Louis proceeded to his cell and slammed the door. Another prison employee was called to hold Louis, and the sack was confiscated and its contents determined to be articles unauthorized for inmates on room restriction.
On January 21, 2003, the caseworker filed a misconduct report against Louis, alleging seven violations, including refusal to submit to a search, disruption, and possessing or receiving unauthorized articles.
On January 25, 2003, Louis had a hearing before an investigative officer. At that hearing, Louis signed a form entitled "Inmate Waiver  Disciplinary Committee" and bearing the identification number for the January 21 incident. The form instructs the inmate to initial the rights he or she is waiving with regard to a disciplinary hearing before the prison's disciplinary committee. Although Louis signed the form, he did not initial any of the rights *441 listed on the form. A disciplinary hearing was scheduled for February 3.
On January 26, 2003, Louis sent to the disciplinary committee a request for witnesses, which request the disciplinary committee received on January 29.
On January 29, 2003, Louis signed another disciplinary committee hearing waiver form bearing the identification number for the January 21 incident. This time, Louis indicated by his initials that he waived his "right to [his] appearance before the [disciplinary committee]." The form indicated that such waiver also constituted a waiver of the right to a representative, the right to have the reporting employee present at the hearing, the right to request witnesses, the right to receive 24 hours' notice of the charges, and the right to receive 24 hours' notice of the hearing. That same day, Louis sent the disciplinary committee a request for representation at the upcoming hearing, and the disciplinary committee received the request on February 3.
On January 30, 2003, Louis sent the disciplinary committee a notice that he had not intended to sign the waiver of his right to appear at the hearing regarding the events of January 21, that he had believed that the waiver form he signed applied to other misconduct reports, and that he wanted to appear at the hearing. The disciplinary committee received the notice on January 31. The record contains no evidence of other pending misconduct reports for Louis.
On February 3, 2003, the disciplinary committee conducted a disciplinary hearing. Louis did not attend the hearing, and the committee did not discuss his notice that he had not intended to sign the waiver form and wanted to appear. Various reports regarding the incident were read into the record, and the sack and its contents were submitted into evidence.
The disciplinary committee found Louis guilty of refusing to submit to a search, disruption, and possessing and receiving unauthorized articles; the other violations were dismissed. The disciplinary committee assessed Louis 30 days' disciplinary segregation for refusing to submit to the search and 7 days' room restriction for each of the other offenses.
Louis timely filed an appeal, alleging that some of the charges were not supported by competent evidence, that he was told the waiver form he signed on January 29, 2003, was not for the January 21 incident, that the waiver form did not contain the identification number for the incident, and that after he signed the waiver form, he informed DCS that he wanted to appear. The DCS Appeals Board affirmed the disciplinary committee's findings as to the refusal to submit to a search and disruption offenses, and it reversed the disciplinary committee's findings as to the possession and receipt of unauthorized articles offense.
Louis appealed to the district court, assigning that he was "denied his due process hearing on the violations regarding his misconduct report." The district court reversed the appeals board's decision as to Louis' refusal to submit to a search. The court found that although Louis had voluntarily, knowingly, and intelligently signed the waiver form, he had effected a valid revocation of his waiver and should have been afforded his appearance at the disciplinary hearing and his right to present evidence in his defense. The district court noted:
I know of no department regulation or statute that prohibits an inmate from withdrawing or revoking his/her waiver of appearance and right to present a defense, as long as it is received by *442 [DCS] reasonably in advance of the hearing, and [DCS] has not been prejudiced by it.
DCS now appeals to this court.

ASSIGNMENT OF ERROR
DCS assigns that the district court erred in finding that the exclusion of Louis from his disciplinary hearing was a due process violation.

STANDARD OF REVIEW
An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act. See Neb.Rev.Stat. § 84-918 (Reissue 1999). A final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Piska v. Nebraska Dept. of Soc. Servs., 252 Neb. 589, 567 N.W.2d 544 (1997); Loup City Pub. Sch. v. Nebraska Dept. of Rev., 252 Neb. 387, 562 N.W.2d 551 (1997). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Gottsch Feeding Corp. v. State, 261 Neb. 19, 621 N.W.2d 109 (2001). An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. Id. Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. Id.

ANALYSIS

Protected Liberty Interest.
Generally, in such cases, before examining the procedures alleged to have been required by due process in the disciplinary proceedings, we first determine whether due process attached to those proceedings. That is, we would consider whether the disciplinary segregation imposed in this case infringed or implicated a liberty interest. If there is a constitutionally protected liberty interest at stake, then at a minimum, the disciplinary proceedings must comply with constitutionally adequate due process standards. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court considered whether disciplinary segregation implicated a liberty interest. In that case, an inmate challenged the imposition of 30 days' disciplinary segregation for misconduct. The Court in Sandin determined that a state-created liberty interest could arise only when a prison's action imposed an "a typical and significant hardship on the in-mate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293. The Court considered the following factors: (1) the amount of time the inmate spent in disciplinary segregation, (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in similar confinement, and (3) whether the state's action would affect the duration of the inmate's sentence.
The record before us contains the following information from the Nebraska Administrative Code, regarding the conditions to which inmates in disciplinary segregation and solitary confinement are subjected:

*443 014 Disciplinary Segregation. Disciplinary segregation is the status of confinement in a cell or other control unit facility separated from general population members insofar as practicable, as a result of a hearing on charges of misconduct pursuant to this Rule. Inmates housed in disciplinary segregation will have significantly fewer privileges than those housed in administrative detention.
68 Neb. Admin. Code, ch. 6, § 014 (2000).
The record affords us scant information on the conditions of disciplinary segregation. DCS neglected to argue, and thus we cannot consider, whether disciplinary segregation implicated a liberty interest. See Forget v. State, 265 Neb. 488, 658 N.W.2d 271 (2003) (in order to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error). However, assuming, without deciding, that the disciplinary segregation imposed in the instant case does implicate a liberty interest, we consider whether Louis' due process rights were violated.

Refusal to Allow Withdrawal of Waiver.
The district court made the factual finding that Louis signed the waiver form voluntarily, knowingly, and intelligently. Evidence in the record supports that conclusion, and we find no error on the record with regard to it. See Gottsch Feeding Corp. v. State, 261 Neb. 19, 621 N.W.2d 109 (2001). Having concluded that Louis' waiver was valid, we consider whether DCS deprived him of due process in not recognizing his withdrawal or revocation of such waiver.
Prison disciplinary proceedings are not treated as criminal prosecutions, and therefore, the full panoply of rights due a criminal defendant does not apply; instead, there must be a mutual accommodation between the institutional needs and objectives and the provisions of the Constitution. Lynch v. Nebraska Dept. of Corr. Servs., 245 Neb. 603, 514 N.W.2d 310 (1994). "Disciplinary hearings are sui generis, governed by neither the evidentiary rules of a civil trial, a criminal trial, nor an administrative hearing. The only limitations are those imposed by due process, a statute, or administrative regulations." Claypool v. Nebraska Dept. of Corr. Servs., 12 Neb.App. 87, 92, 667 N.W.2d 267, 273 (2003).
By purporting to revoke the waiver, Louis sought to reactivate the due process rights he had waived. However, "'"[a] party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, [but], having once done so, he cannot subsequently invoke its protection."'" Alabama Cartage Co. v. International Brotherhood, etc., 250 Ala. 372, 376, 34 So.2d 576, 579 (1948), quoting City of Birmingham v. Wills, 178 Ala. 198, 59 So. 173 (1912). See, also, Shapiro v. Leslie Fay Corp., 138 N.Y.S.2d 606 (N.Y.Sup.1954); Selzer v. Baker, 295 N.Y. 145, 65 N.E.2d 752 (1946); DeWitt v. State, ex rel., 108 Ohio St. 513, 141 N.E. 551 (1923). Once Louis validly waived his right to be present at a hearing and the other associated rights, the disciplinary committee was not required to allow Louis to withdraw that waiver. To hold otherwise would compromise the institutional needs and objectives of DCS by clouding inmate waivers with uncertainty and wreaking havoc with the scheduling and conduct of disciplinary hearings. Therefore, we conclude that the district court erred in determining that Louis was entitled to revoke his waiver of rights and that the court consequently *444 erred in finding that Louis was deprived of procedural due process.

CONCLUSION
For the foregoing reasons, we reverse the decision of the district court and remand the cause with direction to affirm the order of the appeals board.
REVERSED AND REMANDED WITH DIRECTION.