IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LeFever v. Nebraska Dept. of Corr. Servs.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

Luke LeFever, appellant,

v.

Nebraska Department of Correctional Services, appellee.

Filed May 6, 2025.    No. A-24-601.

Appeal from the District Court for Lancaster County: Susan I. Strong, Judge. Affirmed.

Luke LeFever, pro se.

Michael T. Hilgers, Attorney General, and Joseph W. McKechnie for appellee.

Pirtle, Bishop, and Welch, Judges.

Bishop, Judge.

## INTRODUCTION

Luke LeFever, an inmate at the Reception and Treatment Center, filed a petition seeking judicial review after he received a disciplinary sanction of 30 days' loss of good time for a rule infraction. Upon review, the Lancaster County District Court affirmed the decision of the Nebraska Department of Correctional Services Appeals Board (Appeals Board), which upheld the decision of the Institutional Disciplinary Committee (IDC) finding LeFever guilty of the rule infraction and imposing the sanction. LeFever now appeals to this court, claiming that he was denied due process in various ways. We affirm.

## BACKGROUND

LeFever is an inmate housed in the skilled nursing unit at the Reception and Treatment Center. As relevant to this appeal, he was charged with "Use of Threatening Language or

Gestures," in violation of a Nebraska Department of Correctional Services' rule, which we will refer to as "Rule 5-2-H." See 68 Neb. Admin. Code, ch. 5, § 005II[H] (2023).

On August 31, 2023, a misconduct report was filed accusing LeFever of violating Rule 5-2-H. In the report, James Hauschildt, a registered nurse at the Reception and Treatment Center, stated:

> . . . [O]n August 31, 2023[,] at approximately 1720 hours, . . . I asked incarcerated individual Le[F]ever . . . if he needed assistance in the shower or any assistance per mandate by nursing administration to ask each and every shift. While I was in the nurse's station, incarcerated individual Le[F]ever . . . wheeled himself per wheelchair past the security desk and I overheard him yelling out loud, "that mother-fucker Jim asked me if I wanted any help and I told that motherfucker to stay the fuck away. Next time I see him I am going to punch that motherfucker". Based on the threat imposed, I feared for my safety and immediately informed the C.O. on duty of the incident and informed him of my intent to write an IR and forward to the nursing manager for SNF.

The Nebraska Department of Correctional Services' "Disciplinary Misconduct Reporting Form" shows that a "Hearing Before Investigating Officer" was held on September 5, 2023, and LeFever was present. The form states:

> For the purposes of my Disciplinary Committee hearing on this misconduct report:
> IDC Representation Requested: YES          Who: inmate [name]
> IDC Witnesses Requested: WAIVED          Who:
> IDC Employee Requested: YES
> . . . .
> Dismissal Recommended: NO
> Investigation Continued: NO[.]

The form also states:

> Ask inmate (if applicable): Do you knowingly, intelligently, and voluntarily waive the above indicated rights? Do you affirm that no threats, coercion, or promises have been made to you to obtain your signature? Do you understand that the rights you've waived will not influence the disposition of the Committee?
> Inmate's Waiver Response: YES[.]

A copy of the completed report was delivered to LeFever that day, with a recommended disciplinary committee hearing date of September 11. The form was signed by LeFever and the investigating officer.

According to an "[IDC] Action Sheet" dated September 11, 2023, the hearing was continued to "[w]ill notify" because of "[t]he inmate[']s request for the reporting employee who is unavailable." The action sheet also listed the charges as follows: count 1, "2H-Use of Threatening Language or Gestures"; count 2, "3D-Swearing, Cursing, or Use of Abusive Language or Gestures"; and count 3, "3N-Violation of Regulations." On September 14, LeFever was notified that the IDC hearing would be held on September 18.

At the IDC hearing on September 18, 2023, LeFever appeared with an inmate representative and Hauschildt was also present. Jonathan Locus was the "hearing officer and the committee chairperson." After Locus recounted the progression of the matter from the time the misconduct report was written (including what was written in the report) up to the current IDC hearing, he asked if there were comments. The following colloquy was then had on the record.

INMATE LEFEVER: Me? I would like to ask (indiscernible) the miscon- -- misconduct report be dismissed as it exceeded the seven-day period. The (indiscernible) --

THE CHAIR: Misconduct report incident happened on the 31st of August. It was originally scheduled to be heard on the 11th of September. Excluding holidays and weekends, that is within the seven-day time period.

Because the reporting employee was unavailable on the 11th, your misconduct report was continued. It was continued for a valid reason and for good cause, your request of the reporting employee. So . . . the seven days don't apply.

INMATE LEFEVER: How can that be?

THE CHAIR: It doesn't apply because it was continued for a good reason.

INMATE LEFEVER: What was the good reason?

THE CHAIR: The reporting employee was unavailable.

INMATE LEFEVER: What was he unavailable for?

THE CHAIR: He was not here.

INMATE LEFEVER: What does that have to do with my time?

THE CHAIR: You requested him. It's your due process rights.

INMATE LEFEVER: He's your employee.

THE CHAIR: Okay, but it's due process. You request him; we have to produce him. Unless you choose to waive him, I can't do anything about that.

INMATE LEFEVER: The continuance was an invalid notification --

THE CHAIR: Negative.

INMATE LEFEVER: You cannot just say "Continue: will notify".

THE CHAIR: Sure we can.

. . . .

THE CHAIR: And we did notify you. We continued it to "will notify," and then we notified you when your hearing would be.

INMATE LEFEVER: It's outside the required deadline.

THE CHAIR: Negative. The time limits don't apply.

INMATE LEFEVER: Can you show me a statute that's --

THE CHAIR: No, I don't. It's the rule book. Read the rule book. Seven days, excluding holidays and weekends.

LeFever was then allowed to question Hauschildt. Locus inserted himself in the questioning of Hauschildt and asked questions of LeFever as well.

According to Hauschildt, "LeFever was in the shower in the B Gallery, and I was in the gallery passing medications to other inmates." "I have been asked by our Nurse Manager to offer

assistance to Mr. LeFever." Hauschildt "[did not] know" if LeFever pushed the call light in the shower. Hauschildt confirmed he followed proper procedure in regard to this situation.

Hauschildt was then asked about the portion of his report where it states that he heard LeFever yelling out loud and referring to him as a "motherfucker" and saying he was "going to punch that motherfucker." Hauschildt confirmed that he was at the nurses' station when he heard LeFever make those statements. "[LeFever] said it loudly so . . . [Hauschildt] could hear from behind the closed door -- behind the glass" but Hauschildt was "not sure" if LeFever was talking to him at that time; others were present. Hauschildt "told the C.O. on shift that night," but could not recall who that was.

There was also some discussion about the "IR" referred to in the misconduct report.

INMATE LEFEVER: Yeah, where -- where's the incident report [Hauschildt] wrote?

THE CHAIR: I don't have any incident report.

INMATE LEFEVER: He says he writes an incident report.

THE CHAIR: Well, he wrote a misconduct report.

INMATE LEFEVER: No, an IR is incident report.

THE CHAIR: Okay.

INMATE LEFEVER: Where's the incident report?

THE CHAIR: Well there -- there might be a misunderstanding exactly what's a misconduct report and what's an incident report.

INMATE LEFEVER: Well this (indiscernible) --

THE CHAIR: I think the only thing he wrote was a misconduct report. That's all I got.

INMATE LEFEVER: Okay, so if he wrote an incident report (indiscernible) --

THE CHAIR: Any other questions for the reporting employee? 'Cause I need to let the reporting employee go about their duties.

INMATE LEFEVER: I'm asking if he wrote an incident report, who wrote the misconduct report?

THE CHAIR: He wrote the misconduct report.

INMATE LEFEVER: That's not what he says.

THE CHAIR: All right. This is your last opportunity for questions.

INMATE LEFEVER: Have you helped Mr. LeFever in the shower since then?

THE CHAIR: Not relevant.

INMATE LEFEVER: Okay, I'm done.

LeFever was then given the opportunity to speak. He asked that the report be dismissed for "lack of any evidence to support it." "[B]y [Hauschildt's] own admission, the actions he says happened are not directed at him or to him by any means." LeFever also stated that "prior to this supposed incident," he told five staff members that "Jim" made him feel uncomfortable, and he asked other staff to help him with his disability needs. "The relevance of all this is . . . nobody comes until the call light is used. That's the proper procedure here when I'm ready for help," but "Jim had just showed up out of the blue, open [sic] my door, ready to help me, when I wasn't even

done or summoning anybody"; "it's a recurring theme" and LeFever was "trying to avoid him." "When he came to the door and asked, I told him to get away."

LeFever named four staff "who would support what I'm saying." When Locus noted that LeFever did not call any of them as witnesses, LeFever stated, "Yeah, well, now I'm requesting that they be called." Locus responded, "You waived witnesses at your PHO hearing," "[i]t says 'waived,' and you signed it."

LeFever asked that he be found not guilty on all charges.

After going both off and then back on the record at "1237 hours," Locus stated that LeFever was "being found in violation of Count No. 1, 2H, use of threatening language or gestures. That's going to carry with it a sanction of 30 days' loss of good time. Counts 2 and 3 are dismissed." The findings and sanction were also memorialized in writing.

LeFever appealed the IDC decision to the Appeals Board. He argued that his right to due process was violated when (1) the IDC hearing was not held within 7 business days of the infraction as required by the Nebraska Administrative Code, (2) the IDC hearing was "invalidly continued" without his request or agreement to a continuance, (3) he was not allowed to present witness testimony from named staff members, (4) the IDC hearing was not fair or impartial because Locus made statements and acted in a manner which "demonstrated" that he had predetermined a finding of guilt, (5) there was no evidence which supported a finding of guilt, (6) the "false and unfounded allegation" was "continued [r]etaliation that [he] has endured from NDCS," (7) the sanction imposed was excessive, and (8) the IDC's decision was to be based solely on information obtained in the hearing process.

On October 23, 2023, the Appeals Board upheld the decision of the IDC. The Appeals Board found "substantial evidence" was presented to the IDC proving LeFever's "'Use of Threatening Language or Gestures.'" The record indicated LeFever made a statement threatening physical harm to a staff member, and that was "sufficient evidence of a Rule 5-II-H violation"; a finding of guilt did not require a showing that the inmate could follow through on the threat. The Appeals Board stated,

> The IDC hearing was not held within 7 business days of the infraction because it was continued. Once the hearing is continued, the 7-day requirement is no longer in effect. The continuance was proper because inmate Le[F]ever had not waived his right to have the reporting employee present at the hearing. Accordingly, the IDC had an obligation to have Registered Nurse Hauschildt present, and it required a continuance to ensure he was. The IDC does not need an inmate's consent to grant a continuance.

The Appeals Board also stated that LeFever waived his right to witnesses. It found the following. No evidence suggested that Locus predetermined the finding of guilt, nor was there evidence that the charge was brought against LeFever for any improper reason, such as retaliation. The imposition of 30 days' loss of good time was within the appropriate range of sanctions, was proportionate to the offense, and was necessary to deter LeFever and other inmates from committing similar offenses in the future. And LeFever was afforded all necessary due process.

On November 21, 2023, LeFever petitioned the Lancaster County District Court for judicial review pursuant to the Administrative Procedure Act. In its order entered on July 1, 2024, the district court summarily affirmed the decision of the Appeals Board.

LeFever now appeals to this court.

## ASSIGNMENTS OF ERROR

LeFever assigns, consolidated and reordered, that his due process rights were violated when (1) the hearing was not held within the allotted time and there was not good cause shown to support the continuance, (2) he was not allowed to call witnesses, (3) the decision was not supported by sufficient evidence, and (4) the disciplinary hearing officer did not conduct the hearing in a fair or impartial manner.

## STANDARD OF REVIEW

An aggrieved party may obtain review of any judgment or final order entered by a district court under the Administrative Procedure Act (APA). See Neb. Rev. Stat. § 84-918 (Reissue 2024). A final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Lessley v. Nebraska Dept. of Corr. Servs.*, 15 Neb. App. 955, 739 N.W.2d 470 (2007). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.* Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Id.*

## ANALYSIS

In Nebraska, the reduction of sentence for good behavior is a statutory right which may not be taken away without following minimum due process procedures. *Lynch v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 603, 514 N.W.2d 310 (1994). When determining what minimum due process is required for prison disciplinary proceedings, it is important to note that such proceedings are not treated as criminal prosecutions, and therefore, the full panoply of rights due a criminal defendant does not apply. *Id.* Instead, there must be a mutual accommodation between the institutional needs and objectives and the provisions of the Constitution. *Id.* When good time credits are a protectable liberty interest, an inmate facing disciplinary charges must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Id.* (citing *Wolff v. McDonnell,* 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). The rules of evidence do not apply in prison disciplinary hearings. See *Dailey v. Nebraska Dept. of Corr. Servs.*, 6 Neb. App. 919, 578 N.W.2d 869 (1998).

### HEARING HELD WITHIN ALLOTTED TIME

LeFever argues that he was denied due process by not having a hearing within the prescribed time frame.

The Nebraska Administrative Code provides, "An institutional disciplinary hearing shall be held within seven days, excluding weekends and holidays, after the occurrence or discovery of

an infraction." 68 Neb. Admin. Code, ch. 6, § 008.05 (2023). And Neb. Rev. Stat. § 83-4,121 (Reissue 2024) provides, "No disciplinary proceeding shall be commenced more than eight calendar days after the infraction or the discovery of such infraction unless the committed person is unable or unavailable for any reason to participate in a disciplinary proceeding." The disciplinary process contemplated by § 83-4,121 is commenced when written notice of the infraction is served on an inmate. *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991). "[A] penal inmate's due process rights have not been violated when he or she has not been prejudiced by a delay in performing an act regarding prison disciplinary proceedings within the time prescribed by law." *Id.* at 44-45, 469 N.W.2d at 124 (misconduct report submitted 5 days in excess of statutory prescription, and disciplinary proceedings commenced within 1 day of time provided for in § 83-4,121; it was neither alleged by inmate nor reflected in the record how he was prejudiced by minimis delay; proceedings provided to inmate complied with constitutional procedural due process requirements).

Here, the Rule 5-2-H infraction occurred on August 31, 2023, and the misconduct report was filed that same day. LeFever was present at a hearing with the investigating officer on September 5 and received a copy of the report that same day. Thus, the disciplinary proceeding commenced within 8 calendar days as required by § 83-4,121. The IDC hearing set for September 11 was also within 7 days (excluding weekends and holidays) of the infraction per the Nebraska Administrative Code; that hearing was ultimately continued. The "[IDC] Action Sheet" dated September 11, 2023, notes that the hearing was continued to "[w]ill notify" because of "[t]he inmate[']s request for the reporting employee who is unavailable." LeFever claims that continuance was attributed to him, even though he did not request the continuance.

The Nebraska Administrative Code allows the IDC to continue or postpone a disciplinary hearing.

> The institutional disciplinary committee may grant a continuance or postponement of the disciplinary hearing. A request for a continuance may be made by either institutional staff involved in the discipline process or the inmate. A continuance may be granted only for good cause shown for a reasonable period of time, and shall be made in writing and made part of the disciplinary record.

68 Neb. Admin. Code, ch. 6, § 008.13 (2023). Here, the IDC continued the hearing on September 11 to "will notify" because the reporting employee (Hauschildt) was "unavailable." See 68 Neb. Admin. Code, ch. 6, § 008.07 (2023) ("[t]he Reporting Employee shall appear at the disciplinary hearing unless the inmate waives his/her presence in writing"). The continuance was made in writing, as was the subsequent notification to LeFever that the hearing would be held on September 18. The hearing was then held on September 18 with Hauschildt present.

LeFever claims that "[g]ood cause was not shown [for the continuance] as the reporting employee was present at RTC facility on 9/11/2023 and DHO Locust [sic] was on the Skilled Nursing Facility unit for 4 hours on 9/11/2023 for hearing." Brief for appellant at 12. LeFever's claim that the reporting employee was present at the facility on September 11 is not supported by the record before us.

LeFever's due process rights were not violated by the continuance or the timing of the IDC hearing.

LeFever argues that he was denied due process because he was not allowed to call witnesses.

Neb. Rev. Stat. § 83-4,122(4) (Reissue 2024) states in relevant part, "The inmate charged . . . shall be allowed to call witnesses and present documentary evidence in his or her defense when permitting him or her to do so will not be unduly hazardous to institutional safety or correctional goals." And 68 Neb. Admin. Code, ch. 6, § 008.07 (2023), provides in relevant part, "Requests for witnesses or documentary evidence must be made at the time of the investigatory hearing, or must be in writing and received by designated staff at least 24 hours in advance of the hearing."

The record before us shows that at the September 5, 2023, hearing before the investigation officer, LeFever "waived" witnesses. It was not until the IDC hearing was in progress on September 18 that LeFever orally stated, "now I'm requesting" that four staff members be called as witnesses. Locus responded, "You waived witnesses at your PHO hearing," "[i]t says 'waived,' and you signed it." See, *Louis v. Nebraska Dept. of Corr. Servs.*, 12 Neb. App. 944, 950, 687 N.W.2d 438, 443 (2004) (once inmate validly waived his right to be present at hearing and other associated rights, the disciplinary committee was not required to allow inmate to withdraw that waiver; "To hold otherwise would compromise the institutional needs and objectives of DCS by clouding inmate waivers with uncertainty and wreaking havoc with the scheduling and conduct of disciplinary hearings.")

LeFever's due process rights were not violated when he was not allowed to call witnesses at the hearing on September 18, 2023. Not only had he waived his right to call witnesses prior to the hearing, but he also failed to provide a written request to designated staff at least 24 hours in advance of the hearing.

SUFFICIENCY OF EVIDENCE

LeFever argues that there was not sufficient evidence to find him guilty of the Rule 5-2-H violation.

Pursuant to Rule 5-2-H, inmates are prohibited from "[u]sing language or gestures threatening physical harm to another person." This class of offense was subject to a loss of good time not exceeding 90 days. See 68 Neb. Admin. Code, ch. 6, § 0010.02 (2023).

An inmate may be found guilty of a rule violation only when substantial evidence exists that he or she engaged in conduct that fulfills all necessary elements of the offense. 68 Neb. Admin. Code, ch. 5, § 004 (2023). See, also, § 83-4,122(9) (in disciplinary cases which may involve imposition of disciplinary isolation or loss of good time credit, standard of proof to sustain charge shall be substantial evidence). "Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Haynes v. Nebraska Dept. of Corr. Servs.*, 314 Neb. 771, 780, 993 N.W.2d 97, 104 (2023) (internal quotation marks omitted). "To comport with due process requirements, the IDC's findings must be supported by evidence that has some indicia of reliability." *Id.* (internal quotation marks omitted).

Here, the evidence from the IDC hearing established that Hauschildt was in the nurse's station when he heard LeFever say, loudly, "'that mother-fucker Jim asked me if I wanted any help and I told that motherfucker to stay the fuck away. Next time I see him I am going to punch

that motherfucker.'" This was sufficient to support the IDC's finding that LeFever violated Rule 5-2-H, and contrary to LeFever's claim otherwise, additional supporting evidence was not necessary.

### FAIR AND IMPARTIAL HEARING

LeFever claims that he was denied due process because Locus did not conduct the IDC hearing in an impartial manner. He argues Locus interfered with his right to question witnesses and predetermined guilt and punishment.

We have already addressed LeFever's claim that he was not allowed to call witnesses. But he also argues that Locus "refused to allow Hauschildt to answer [LeFever's] question of where his 'IR' . . . was at." Brief for appellant 15. Whether Hauschildt's report was ultimately titled as an "IR" report or a misconduct report is of no consequence because the report, as written, set forth Hauschildt's allegations against LeFever.

There is nothing in the record to suggest that Locus relied on anything other than the evidence presented at the IDC hearing to find LeFever guilty of violating Rule 5-2-H. And the fact that Locus announced the ruling quickly does not demonstrate a predetermined finding of guilt and punishment.

To the extent that LeFever relies on statements allegedly made by Locus to another inmate "the following day on 9/19/2023," brief for appellant at 16, to support his claim that Locus was not impartial, such statements do not appear in our record and cannot be considered.

### LEFEVER PROVIDED DUE PROCESS

The record establishes that LeFever was given (1) advance written notice of the disciplinary charges, (2) an opportunity to call witnesses (which he waived and/or did not provide a written request to designated staff), and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Accordingly, he was provided with the requisite due process for prison disciplinary proceedings. See *Lynch v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 603, 514 N.W.2d 310 (1994).

### CONCLUSION

For the reasons stated above, we affirm the district court's decision which affirmed the decision of the Appeals Board, which upheld the decision of the IDC finding LeFever guilty of the rule infraction and imposing the sanction.

AFFIRMED.